## NOBLES *v.* THE STATE.

1. In a misdemeanor case, while it is competent, upon the request of either
party, to put the jurors upon their voir dire, it is largely in the dis-
cretion of the court as to what questions will be propounded. In the
exercise of this discretion the judge will be guided largely by the ground
of attack.   Where the ground of attack was based only· upon the fact
that the jurors had previously heard certain affidavits read and certain
evidence delivered on a motion to continue, which would tend to cause
them to prejudge the case, and it was insisted that the statutory ques-
tions be propounded to them on the voir dire, and the court propounded
the question, "Have you, from having seen the crime committed or from
having heard any part of the evidence delivered under oath, formed and

expressed any opinion in regard to the guilt or innocence of the prisoner at the bar?" it was no abuse of discretion to refuse to allow either of the other statutory questions to be propounded.

2. In such case it is proper, after the court has pronounced the jurors competent, to require the jury to be selected from those declared competent, in the same manner as if there had been no challenge of their competency; and accordingly it is not erroneous to require the defendant to exercise the first right to strike, under the alternating rule provided for the selection of jurors in misdemeanor cases.

3. Where one is prosecuted for adultery, evidence tending to show improper conduct between the defendant and his coadulterer, committed in a different county from that wherein the prosecution is conducted, under the rulings in Lipham v. State, 125 Ga. 52, and citations, is admissible as showing the relations between the parties, and as a circumstance pointing to the guilt of the accused.

4. A defendant, while making a statement, used for the purpose of illustration a map which he held in his hand, but the map was not introduced in evidence. It was not erroneous for the court to refuse to allow counsel for the defendant to make use of the map during his argument. (LUMPKIN, J., dissents.)

5. It is only where a case is wholly dependent upon the law of circumstantial evidence that the trial judge is required to give the law of circumstantial evidence. It follows that where the indictment is supported by both circumstantial and direct evidence, it is not erroneous for the court to refuse to charge the law of circumstantial evidence.

6. The evidence supports the verdict, and no error was committed by the court, which, for any reason assigned, requires a reversal of the judgment refusing to grant a new trial.

Submitted November 19,—Decided December 13, 1906.

Indictment for adultery. Before Judge Peeples. City court of Nashville. October 6, 1906.

Upon both direct and circumstantial evidence the accused was convicted, and he excepted to the refusal of a new trial. The special grounds of the motion for new trial are, in brief:

1. Before pleading to the indictment, the defendant filed his challenge to the poll of each of the jurors (naming twenty-four), being the jury put upon him separately; for the reason that at previous terms the affidavits of certain named witnesses, including the woman with whom the adultery was alleged to have been committed, and the affidavit of the accused were read in the presence of the court, the country, and the jury; "and much of the evidence of the case having been adduced in the court, the defendant challenges the poll of each of the jurors above named and empaneled to try him, and such others as may be put upon him, for the reason that

many or all of the jury are disqualified, from having heard the testimony, or from having expressed an opinion in the case."

2. The court overruled defendant's motion to have the jurors put upon their voir dire.

3. The court had each juror to stand up and take the oath that he would true answers make to such questions as might be asked him to show his competency, etc., after which the following question only was propounded to him: "Have you, from having seen the crime committed, or having heard any of the testimony delivered on oath, formed and expressed any opinion in regard to the guilt or the innocence of the prisoner at the bar?" Each juror (save one), having answered in the negative, was directed to take his seat, and no other of the questions in the Penal Code, § 975, was asked. Counsel insisted, that, if each juror was qualified, the State should either accept or reject him; and if accepted by the State, he should be placed upon the defendant; and if accepted by the defendant, he was then qualified; but if rejected, he was disqualified and should go out of the box and not serve. This the court overruled, and had counsel to strike from the list of the jury furnished to them by the clerk. (The trial judge made this note: "The court overruled the written request to put the jury upon their voir dire, but afterwards passed the following order: 'It is ordered by the court that you can put them up and see if they are competent, that you can challenge any juror.' This was done, and the court directed that the jury stand up, and the solicitor placed them on their voir dire. They were found to be competent, except one. The court had the panel filled, and requested the defendant to strike first from the panel so qualified. The court asked defendant's counsel, at the time the question was put to each juror, if he desired to ask him any questions; which he declined, saying all he wanted was a qualified jury.")

4, 5. The testimony related, in larger part, to acts and conduct in the town of Alapaha, Berrien county. Two witnesses testified that in July, 1904, the accused and the woman named in the indictment went to a hotel in Tifton (which was then in Berrien, but in Tift county at the time of the trial), about two o'clock a. m., and the accused registered the name of the woman's husband and procured a room for her; and that they left Tifton on the next day. This was admitted over objection that acts committed in Tift

county could not support the charge of a crime as committed in Berrien county.

6, 7. The witness who testified to having seen the accused and the woman engaged in the criminal act was a negro named George Washington. He gave the time as on a night in April, and the place as hard by a church in Alapaha. The accused, while making his statement, held in his hand a map from which he undertook to explain to the jury the location of the streets in the town and that of the church, and the routes that the witness had testified he traveled. Counsel, contending that the witness was thus successfully contradicted, offered to use the map in argument to the jury. The court ruled that counsel could comment on anything that the accused said about the map in his statement, but could not exhibit the map to the jury, as it had not been introduced in evidence.

8. The State having relied upon both circumstantial and direct evidence, "it was the duty of the court to define to the jury the technical distinction between positive and circumstantial evidence, and the failure of the court to so define and to give them the rules by which they could weigh and ascertain this testimony was error."

9. The court neglected to give in charge to the jury what a reasonable hypothesis means; it being a technical legal term, and not easily or commonly understood by the average juror.

*Hendricks, Smith & Christian,* for plaintiff in error.

*W. D. Buie,* solicitor, *J. P. Knight,* and *Alexander & Gray,* contra.

ATKINSON, J. 1. In the 1st, 2d, and 3d grounds of the amendment to the motion for new trial, complaint is made of certain rulings of the court relating to questions to be propounded to the jurors for the purpose of ascertaining whether or not they were competent. This is a misdemeanor case. The jurors had been attacked only upon the ground of having previously heard certain affidavits read and certain evidence delivered on a motion to continue. The presiding judge permitted the jurors to be asked, under oath: "Have you, from having seen the crime committed, or from having heard any testimony delivered on oath, formed and expressed any opinion in regard to the guilt or innocence of the prisoner at the bar?" No juror was ruled competent except such as answered that question in the negative. In *Sullivan* v. *Padrosa,* 122 *Ga.* 338, Mr. Justice Cobb, speaking for the court, says (p.

340) : "In misdemeanor and civil cases there is no statutory provision regulating the method to be adopted by the court in determining the competency of the juror; but the settled rule is that either party has a right to request that the jurors be put upon their voir dire in order that their competency may be determined. When such request is made, it is the duty of the court to propound, or cause to be propounded, such questions as will test the competency of the jurors to pass upon the issues in the case. The questions to be asked in each case are to be determined by the court, and what shall be the character and number of the questions is left largely to the discretion of the judge, who must keep in mind all the time the object to be attained, that is the determination of whether the minds of the jurors are in such a condition that they can pass fairly and intelligently upon the issues to be submitted to them." In the case at bar, taking into consideration the grounds of attack upon the competency of the jurors and the question which the court permitted to be propounded to the jurors, it does not appear that there was any such abuse of discretion upon the part of the court as would require the reversal of the judgment.

2. After the jurors had been challenged by the defendant and pronounced competent by the court, it was proper to direct the selection of the jury to try the defendant from those jurors who had been declared competent, in the same manner as if there had been no challenge. This being true, it was not erroneous for the court to impose upon the defendant the duty first of exercising his right to strike, according to the alternating system, so as to give to the defendant the first, and the State the second, strike.

3. In the 4th and 5th grounds of the amendment, complaint is made touching the admission of certain evidence offered which tended to show improper conduct between the defendant and the person with whom it is charged he had committed the adultery, the evidence showing that the improper conduct referred to was not committed within the county within which the defendant was being tried. The objection was that the evidence was irrelevant and immaterial. While the evidence objected to could not be the basis of a conviction in the county where the prosecution was conducted, under the ruling in *Lipham* v. *State,* 125 *Ga.* 52, and authorities cited, it was nevertheless relevant and admissible for the purpose of showing the relation between the defendant and the person with

whom it is alleged he had committed the offense of adultery, and it could be considered as a circumstance looking to the guilt of the accused.

4. In the 6th and 7th grounds of the amendment, complaint is made of a ruling of the court which refused to allow counsel for the accused to use, in his argument, a map which the accused had held in his hand while he was making his statement and used for the purpose of illustrating a portion of the statement. The privileges of the accused under the law allowing him to make a statement to the jury are exceedingly broad. But the right to make a statement can not be legitimately used as a vehicle to convey to the jury documentary evidence which has not been formally offered in evidence. If the accused desires the full benefit of evidence of this character, he must introduce the same in evidence and take the consequences of offering evidence, thereby forfeiting the right to a concluding argument by his counsel. See, in this connection, *Nero* v. *State,* 126 *Ga.* 554.

5. Complaint is also made touching the refusal of the judge to charge the law relating to certainty of proof necessary to convict upon circumstantial evidence. The record discloses that there was direct as well as circumstantial evidence, and consequently that the conviction of the accused did not depend wholly upon circumstantial evidence. Under such circumstances it was not erroneous for the judge to refuse to give in charge to the jury the law on the subject of circumstantial evidence. See, in this connection, *McElroy* v. *State,* 125 *Ga.* 37; *Smith* v. *State,* Id. 296.

6. Other assignments of error are made, but it does not appear that, for any reason urged, the court committed such error in any respect as would authorize a reversal of the judgment of the court below. The evidence supported the verdict, and we will not disturb the discretion of the trial judge in refusing to grant a new trial.　　*Judgment affirmed. All the Justices concur, except*

LUMPKIN, J., dissenting. In all criminal trials the prisoner has a right to make to the court and jury a statement in his own defense, not under oath. It shall have such force only as the jury may think right to give it. They may believe it in preference to the sworn testimony. Penal Code, § 1010. The constitutional right of representation by counsel includes the right to have such counsel argue the case. It would be a poor privilege if the ac-

cused could place before the jury a statement which might be accepted by them in preference to the testimony, but his counsel should be prohibited from arguing the pertinent and material parts of it to the jury.   Undoubtedly the statement of an accused person can not be used as a vehicle for getting before the jury documentary evidence which has not been introduced in the proper manner, and thus practically getting the benefit of such evidence under the guise of a statement, and at the same time securing the advantage of the conclusion in argument, on the ground that no evidence has been introduced.   Thus it has been held that letters and similar documents which should be introduced in evidence, if placed before the jury at all, may be properly excluded when sought to be introduced through the prisoner's statement.   But such is not the case presented here.   In the first place, where the position or location of parties, or of a witness relatively to the scene described, or like matters are pertinent and important for the consideration of the jury, there can be no doubt that the prisoner can state fully and explain to the jury what was such location, situation, or position. And I know of no reason why he may not illustrate this as well as merely describe it in words.   This only makes more clear to the minds of the jury the language of the statement.   So, nothing is more common than, in stating distances, to say that two objects or persons were about as far apart as from the judge's stand to the door of the court-house, or to some other object in view of the jury. It is also very common, in illustrating the relative situation of persons or things, to place books or inkstands, or pens, or other small objects so that the jury may more clearly understand exactly the meaning of the verbal description.   If this can be done by a witness, I know of no reason why an accused person should be prohibited from doing the same thing.   The law would not thus permit *a witness* to make clear his meaning in regard to distances or location by illustration, but require *the accused* to leave his description any the less intelligible to the jury because of difficulty of making such things as clear in words as by the aid of visible illustration.   If verbal descriptions of location may be made more clear by illustrating with the aid of physical objects, why is it not permissible for the accused for that purpose to draw a diagram upon paper, or upon a blackboard if one should be convenient, or to refer to a map?   Where lucidity is obtainable by the use of reasonable

means, the law does not insist upon obscurity even in the statement of the prisoner.

I can well understand how the extent to which these matters should be allowed, and the time occupied in respect to them, and the methods employed, may be within the reasonable control of the presiding judge, and that the prisoner would not be allowed to consume useless time in drawing or exhibiting irrelevant, unnecessary, and immaterial maps or diagrams. I can also understand how it might be improper, under certain circumstances, to allow a map to be carefully prepared by a civil engineer, with his name written upon it, and various other statements made on its face, thus giving it the authenticity of apparently being testified to by him as correct, and to allow the prisoner by a mere reference to this to practically get it in as evidence before the jury without its being actually shown to be correct. In no event should the diagrams or maps referred to only in the prisoner's statement be sent out as evidence with the jury.

But whatever may be the case as to whether the map now involved should have been permitted to be used by the prisoner in making his statement, and as a part of it, the court actually allowed it to be so used, and neither when the statement was made nor afterwards did he withdraw it or exclude it. He not only let it in but left it in as part of or explanatory of and inseparably connected with the statement. Some of the prisoner's statement is wholly unintelligible without looking at the map. Location was a material thing involved in the case. The result of the court's ruling was that he allowed the map to be used by the prisoner in connection with and as part of his statement, and as essential to an understanding of the statement, and yet refused to allow counsel for the defendant in his argument to explain the statement by exhibiting to them the map which had been so used, or even by commenting on it at all. In substance this amounted to nothing more or less than refusing to permit counsel in his argument to comment intelligibly upon a material portion of the prisoner's statement. In the sixth ground of the motion for a new trial this is made clear when it is said that "C. A. Christian, who made the opening argument for the defense, desired to argue to the jury so much of the map or drawing as a part of the defendant's statement and to exhibit the map and drawing in his argument to the jury. The court ruled that counsel

·could not show the map or drawing to the jury, and that he could not comment upon anything shown or illustrated by the plat or ·drawing." Suppose a prisoner charged with assault with intent to murder should claim that he had been attacked, and point to .a hole in the coat he wore at the trial as the place where the knife had cut him, would counsel in his argument be prohibited from pointing to the hole in the coat, and calling the jury's attention to it, because the coat was not put in evidence? It may give some advantage to a prisoner to allow him to make, not under oath, such .a statement "as he may deem proper in his defense;" but if so, it is an advantage which the statute confers, and which the courts can not take away; nor should they curtail the full consideration ·of the statement by the jury, aided by the argument of counsel.

In this case, to allow the statement and the use by the accused ·of the plat, and yet to exclude the argument, was to "keep the word of promise to our ear and break it to our hope."