## 1506. WOODARD *v.* THE STATE.

1. On a trial for seduction it is for the court to construe the meaning of the word "virtuous," as used in the statute. If, at the time of the alleged seduction, the female had never had unlawful sexual intercourse with a man, she was a virtuous female, within the meaning of the law. The test is not purity of mind or purity of heart, but actual physical purity of person. "Every virgin is virtuous."

2. All women are presumed to be virtuous, until the contrary appears.

3. In charging on the subject of the impeachment of witnesses, it is not incumbent upon the court to name the witness or witnesses whose credibility is attacked; it is only necessary (and it is the better practice) to instruct the jury as to the legal rules on the subject of impeachment, leaving to them the duty of making the application of the rules to the evidence and to the witnesses.

4. The statutory right given to a defendant on trial, "to make to the court and jury such statement in the case as he may deem proper in his defense," does not authorize him, as a part of his statement, to make profert of documents, letters, or the like, without proof of their genuineness. Without such proof he can not place them before the jury as corroborating evidence of his statement. Where a defendant was permitted to state that he received certain letters from the prosecutrix, and to state their contents, it was not erroneous to refuse to permit him to read the letters as a part of his unsworn statement.

5. "To accomplish sexual intercourse with a virtuous woman, pending a virtuous engagement to marry her, may be seduction, though consent be obtained without other persuasion than that which is implied (considering the past courtship and the present relations of the parties) in proposing the intercourse and repeating the promise of marriage."

6. No reversible error of law was committed, and the evidence fully supports the verdict.

Indictment for seduction, from Laurens superior court—Judge Martin. October 17, 1908.

Argued December 8, 1908.—Decided January 27, 1909.

*W. C. Davis, John S. Adams, John R. Cooper,* for plaintiff in error.

*Joseph E. Pottle, solicitor-general,* contra.

HILL, C. J. The plaintiff in error was convicted of seduction, and his motion for a new trial was overruled. Besides the general

grounds, he makes numerous assignments of error, based on the charge of the court, and one assignment of error on the ruling of the court restricting the defendant in his statement to the jury. The assignments of error directed against the charge of the court can be easily reduced in number; and so reduced, we will take them up in their order.

1. Several of these exceptions apply to the charge of the court in treating the question as to what constituted a virtuous unmarried female as one of law; and also to an alleged erroneous definition of the term by the court. Neither one of these questions is now open for decision by this court. Both have been well settled by repeated rulings of the Supreme Court of this State. As to the first exception, the Supreme Court has repeatedly ruled that "it is for the court to construe the word 'virtuous' as used in the statute, and the jury should receive and abide by that construction as decisive." *O'Neill* v. *State,* 85 *Ga.* 408 (11 S. E. 857); *Keller* v. *State,* 102 *Ga.* 513 (31 S. E. 92); *McTyier* v. *State,* 91 *Ga.* 255 (18 S. E. 140); *Washington* v. *State,* 124 *Ga.* 426 (52 S. E. 910). The statement by the court in the charge to the jury as to what constituted a virtuous unmarried female has been approved by the Supreme Court in many cases. In the case of *Wood* v. *State,* 48 *Ga.* 193 (15 Am. R. 664), a majority of the court held that the true test of virtue in a female, under the seduction statute, was a personal, physical test; that if at the time of the alleged seduction the female had never had unlawful sexual intercourse with man, she was a virtuous female within the meaning of the law. Or, as expressed by Chief Justice Bleckley in the *O'Neill* case, supra, "every virgin is virtuous." In other words, the question is not one of purity of heart or mind, but actual physical purity of person. This is obviously the only plain and practical test that can be laid down as applicable to the crime of seduction. The test of moral or mental chastity is entirely metaphysical and impracticable. *Jones* v. *State,* 90 *Ga.* 616 (16 S. E. 380); *McTyier* v. *State, Washington* v. *State, O'Neill* v. *State,* supra. The question as to whether the female at the time of the alleged seduction was virtuous, according to this legal definition, is for the determination of the jury; and in determining this question it is entirely proper for them to consider all the facts and circumstances in proof going to show a want of moral chastity, where the female is, in the lan-

guage of the Supreme Court in the case of *O'Neill,* supra, "in such a state of readiness as to need only the form of seduction, without its substance, to win her consent." The court in the present case correctly treated the test of virtue as one of legal definition, and gave the definition as approved by the Supreme Court in many cases, and clearly and accurately told the jury that in deciding whether the female in question had been really seduced, her moral as well as her physical chastity was a relevant matter for their consideration.

2. It is insisted that the court erred in instructing the jury that the presumption of law is that the female alleged to have been seduced was virtuous, and that this presumption remains until removed by proof. That such is a presumption of law has been frequently declared by the Supreme Court. See cases above cited. It certainly will not be denied that in this country all females are deemed to be virtuous in mind, heart, and person, until the contrary be shown.

3. Quite a lengthy extract is made from the charge of the court on the subject of impeachment of witnesses, and the error assigned on this part of the charge is, that the court failed to name the witness who was attempted to be impeached and to whom this portion of the charge was applicable; that only one witness in the case was attempted to be impeached, and this was the female alleged to have been seduced; that the court should have therefore instructed the jury that she was the witness to whom the impeaching testimony was directed and to whom the law as to the impeachment of witnesses applied; that instead of doing this, the court misled the jury by using the personal pronoun "him," instead of "her," in this part of his charge. We do not think there is any merit in this objection. If she was the only witness attempted to be impeached, it is probable that the jury, on the assumption that they were reasonably intelligent, knew to what witness the charge of the court was applicable. Indeed, we think the charge of the court is decidedly better and wiser when couched in impersonal and general language than it would be if it pointed out by name the witness or witnesses to whom the charge was applicable. The jury should always be left to make the concrete application of the law to the evidence and the witnesses.

4. The defendant, in making his statement to the jury, started

to read certain letters, which he stated he had received from the female alleged to have been seduced by him.   The solicitor-general objected to the introduction of the letters in this manner, and the court sustained the objection, but stated to the defendant that he might state that he got the letters, and state their contents, but could not read the original letters as a part of his statement; that he could not make profert of the letters to sustain his statement. The defendant thereupon stated that he had received the letters, and that they were written by the female alleged to have been seduced by him, stated their contents fully to the jury, and in this way got the full benefit of the letters.   Speaking for myself, I think the judge in his ruling was as favorable to the defendant as the law required him to be.   While the statute giving to the defendant the right of making a statement in his defense is unlimited, except by what he himself may consider proper to state in his defense, yet I do not think that it was ever intended by the statute to permit the defendant to introduce documentary evidence as a part of his statement, without preliminary proof as to the genuineness of such evidence, or at least without submitting such documentary evidence to the State's counsel for examination.   Neither do I think that the defendant, as in this case, should be permitted to give his construction of what was contained in written documents. In this very case the injustice of such a ruling is apparent.   The defendant stated that the letters contained admissions of the female in question that another than himself had been the cause of her ruin; but when we refer to the letters, which were afterwards introduced in evidence, we find that they are susceptible of no such construction, but on the contrary contain an appeal to the defendant to marry her in order that no one except themselves would know of her ruin.   But without discussing this question further, the ruling by the court on this point is fully sustained by the Supreme Court in *Nero* v. *State*, 126 *Ga.* 554 (55 S. E. 404) ; *Freeney* v. *State*, 129 *Ga.* 759 (59 S. E. 788) ; *Nobles* v. *State*, 127 *Ga.* 212 (56 S. E. 125) ; *Crawford* v. *State*, 117 *Ga.* 247 (43 S. E. 762) ; *Wells* v. *State*, 97 *Ga.* 210 (22 S. E. 958).   But even if the court committed error in restricting the defendant in the manner indicated by this exception, it does not amount to reversible error; because the letters were afterwards introduced in evidence by him; and he was not, by so introducing them, deprived of the concluding

argument, for there was much other testimony by the defense, and on subjects not embraced in the letters. In other words, the defendant was in no wise injured by this ruling.

5. There are several exceptions made to the charge of the court on the subject of seduction "by persuasion and promises of marriage," it being insisted that these instructions were unauthorized, as "the evidence fails to show any persuasion on the part of the defendant. There was no persuasion or importunity. There was no device, art, wile, or contrivance, mentioned in the evidence used by the defendant, to draw her, or to deceive her into the forbidden act. There was no wooing, beseeching, imploring, appealing by word, look, or gesture." It is earnestly contended, that the evidence simply shows that at the time of the illicit intercourse the defendant promised to marry the woman, and that she yielded to him solely because of such promise, and that therefore the intercourse was "purely a meretricious transaction, and not a case of seduction." Of course, solicitations, even though they may include a promise to marry, whereby the woman, in consideration of the promise, surrenders her person, are not sufficient to make a case of seduction. But a promise of marriage which a woman believes to be made in good faith, and made as a climax to a long course of wooing, when the man has fully captured the heart of the woman, and she hearkens to the voice of love and yields to her lover because she trusts him, implies persuasion of the strongest character. Indeed, we think that Providence, wisely intending to save the human race from moral wreck and ruin, has made the heart of woman a citadel of virtue, invincible to the brutal forces of lust, and capitulating only to the gentle promptings of confiding love.

In the case of *Wilson* v. *State,* 58 *Ga.* 329, the Supreme Court held: "To accomplish sexual intercourse with a virtuous woman, pending a virtuous engagement to marry her, may be seduction, though consent be obtained without other persuasion than that which is implied (considering the past courtship and the present relation of the parties) in proposing the intercourse and repeating the promise of marriage." This decision has been repeatedly followed since. *Cherry* v. *State,* 112 *Ga.* 871 (38 S. E. 341); *O'Neill* v. *State, Keller* v. *State,* supra; *Disharoon* v. *State,* 95 *Ga.* 351 (22 S. E. 698).

We have examined carefully the excerpts taken from the charge

of the court on this subject, and we find that they all follow the law as declared by the Supreme Court in the above decisions, and it consequently follows that such instructions were not erroneous, if authorized by the evidence; and this brings us to a brief consideration of the evidence for the State. Apparently the young woman alleged to have been seduced was of respectable family, and her personal and educational training had not been neglected. The defendant, several years her senior, was also a member of a respectable family, and these two had been companions from her early childhood. Briefly stated, the female, by her testimony, proves a real case of seduction by persuasion and promises of marriage. She states, that in 1903, following a season of courtship on the part of the defendant, she became engaged to him; that the course of true love between them ran smoothly and purely until 1906, when he began his solicitations for sexual intercourse; that his protestations of love continued along with his solicitations that she surrender her virtue; that during all this time the promise of marriage existed, and was repeatedly used by the defendant as a reason and temptation to induce her to consent to his importunities, and that finally, in 1906, after the day for their marriage had been fixed, and when he had promised, not only to marry her, but to protect her from any harmful result of her sexual intercourse with him, she finally yielded to his persuasions and promises of marriage and consented to the intercourse. This testimony of the girl is fully corroborated by the letters of the defendant, written to her during the period of his courtship and their engagement. These letters show, that he began his siege to win her heart when she was only a child, in 1902; that he succeeded in winning her heart and the promise of her hand in 1903, and the letters contain the most ardent declarations of love and constancy, and the repeated and confident hope that their relation would be consummated by marriage. We do not care to quote extensively from these letters the promises, protestations, enticements, and vows which in the end seem to have been only the engines of lust, used to overcome the maidenly resistance of one who loved "not wisely, but too well." One characteristic quotation contained in the defendant's letters we think it not improper to give: "Dear, do you ever think of me and the time when you will be mine and I yours? I very often catch myself off in dreamland and picture to myself the life, yes,

the happy loving life which true husband and wife live. I say true because I will ever prove true to you, and believe and trust you will to me. Oh, how I long for the day to come when I can call you my own little darling wife." There is no circumstance in this case which can palliate the guilt of the defendant. Even the letters of the girl to him which he claimed contained an admission of un-chastity which caused him to break his promise of marriage, con-strued in the light of all the facts of the case, especially of his own letters to her, appear but the despairing appeal of his victim to induce him to fulfil his promise and save her from ruin.

There are several other exceptions made to certain portions of the charge of the court, but these portions, when considered in connection with the entire charge, are without error, and the charge as a whole is a full, clear, impartial, and accurate exposition of the law as applicable to the facts of the case.

*Judgment affirmed.*