## 5868.  EVERETT v. THE STATE.

1. Where the jury in a criminal case are fully and correctly instructed by the court on the law as to the defendant's statement to the court and jury, and as to their duty to acquit unless satisfied of his guilt beyond a reasonable doubt, the omission to charge specifically that such a doubt may grow out of the defendant's statement is not error.

2. Where an indictment charged the theft of three hogs, particularly described as the property of a named person, and the evidence disclosed that these three hogs, as well as a fourth hog, the ownership of which was unknown, had been stolen, an instruction to the jury that if they believed, beyond a reasonable doubt, that the defendant unlawfully, wrongfully, and fraudulently, took and carried away the hogs described in the indictment, with intent to steal the same, and if they believed such hogs or any one of them to be the property of the person named in the indictment as the owner of the three hogs alleged to have been stolen, then the offense of larceny would be made out, is not subject to objection as authorizing the jury to convict in the event they believed the defendant had stolen a hog not described in the indictment, and which did not belong to the person named therein as the owner of the three therein described.

3. On the trial of a criminal case which depends entirely on circumstantial evidence it is the duty of the court to charge the jury as to the weight and value of circumstantial evidence, even where not requested so to do; but where the case does not depend solely upon circumstantial evidence, it is not error for the court to omit such a charge, in the absence of a timely written request.

DECIDED NOVEMBER 17, 1914.

Indictment for larceny; from Early superior court—Judge Worrill. June 30, 1914.

*Rambo & Wright,* for plaintiff in error.

*B. T. Castellow,* solicitor-general, *R. R. Arnold,* contra.

WADE, J.  The defendant was charged with stealing three hogs belonging to one J. M. Windsor and particularly described in the indictment.  The evidence for the State showed, that Windsor missed three hogs at the usual feeding time, and after dark approached the house of the defendant and there heard hogs squealing, and saw a buggy drive away on the public road; that he followed on foot as rapidly as possible, until he reached Hilton station, where he procured a buggy, with which he overtook one Kelley Cartledge, who was driving a mule hitched to an open buggy containing two hogs, one of which was a hog of Windsor, described in the indictment, and the other a sow unknown to him; that upon Cartledge's statement to Windsor and the officer, that he (Cartledge) had obtained these hogs from the defendant, Windsor returned to the de-

fendant's house, and there found the other two missing hogs described in the indictment; that the defendant knew these last-mentioned two hogs were the property of Windsor, and told Windsor that if they were his hogs he wanted him to have them, and Windsor took them out of the defendant's pen the next day; that the defendant told Windsor that he was willing to do almost anything to effect a compromise then, and did not want the matter to go any further, but Windsor refused to compromise, and took out a warrant for the defendant that night. Cartledge was sworn in behalf of the State, and testified positively that he got the two hogs, found in his possession by Windsor and the officer, from Ivery Everett, the defendant, who he said claimed them as his own; that he and Everett caught the hogs with dogs late that afternoon, and carried them to Everett's house, where two were placed in Everett's pen and the other two in Cartledge's buggy; that after supper at the defendant's house, Cartledge drove off towards his home with the unknown sow and the other hog belonging to Windsor, which were found in his buggy; that Everett turned over these hogs to him in order that he might raise pigs from the sow on halves, and might fatten the other hog on halves. The defendant made a statement at the trial, admitting that he and Cartledge caught the sow and three shoats, and brought them to his house as stated by Windsor and Cartledge, but adding that the sow was his stepfather's, and that the shoats were found with her. He did not claim that the shoats were his property, or that they were the pigs of the sow, which he said he had obtained from his step-father, though he said this sow had some pigs; thus leaving the inference with the jury that the shoats were possibly the pigs of the sow or that he believed them to be. Windsor testified also that he had seen this particular black sow all the year, but did not know whose sow she was, but that she was not the mother of these shoats.

The defendant was convicted, and, on the recommendation of the jury, was sentenced as for a misdemeanor. His motion for a new trial was overruled, and to this judgment he excepts.

1. Besides the general grounds of the motion for a new trial, there are three special grounds, the first of which is that the court erred in charging the jury as follows: "The doubt of the law does not mean a fanciful doubt, it does not mean a vague suspicion or a bare possibility that the defendant may be innocent, but it means

a doubt which has some reasonable foundation on which to rest, it means the doubt of an upright, fair-minded man and juror, who is honestly in search after the truth and which doubt grows out of the evidence, the want of evidence, or proven circumstances in the case." It is alleged that this was error because the court omitted to instruct the jury that if the defendant's statement created in their minds, a reasonable doubt, they should give him the benefit of that doubt; and that this charge eliminated the defendant's statement as a means whereby a reasonable doubt might be created in their minds.

The same point raised by this exception was ruled on by this court in the case of *Early* v. *State,* 14 *Ga. App.* 467 (81 S. E. 385-386). See also cases there cited. In this instance there is obviously no merit in the exception, since, in immediate connection with the charge complained of and following next thereafter, the court in-structed the jury that they might believe the prisoner's statement in preference to the sworn testimony in the case, and further on charged the jury as follows: "If you have a reasonable doubt as to whether the defendant is guilty or not as charged, you ought to acquit him. Take all of the evidence in the case, in connection with the defendant's statement, coupled with all of the surround-ing circumstances in proof, determine what the truth of the mat-ter is, and, when you have arrived at what you believe to be the truth, let your verdict speak what you believe to be the truth." The defendant had the full benefit of the law as to reasonable doubt.

2. The next ground of the motion for a new trial is that the court erred in charging the jury as follows: "If the evidence in this case satisfies the jury, beyond a reasonable doubt, that the defendant Ivery Everett, in this county,—that is Early county,—on or about the 27th day of November, 1913, unlawfully, wrong-fully, and fraudulently took and carried away, with intent to steal the same, the hogs described in this bill of indictment, or any one of them, and if you should believe that such hogs, or any one of the hogs, was the property of J. M. Windsor, then the offense of larceny would be made out and you would be warranted in con-victing the defendant of that charge, otherwise not." It is con-tended that this was error because it authorized the jury to con-vict the defendant if he unlawfully, wrongfully, and fraudulently

took and carried away, with intent to steal the same, any one of the hogs described in the bill of indictment, which would include the sow which Windsor did not claim and the ownership of which was not proved; also that this charge instructed the jury that if any one of the hogs described in the indictment was the property of J. M. Windsor, they would be authorized to find the defendant guilty if he took and carried away, with intent to steal, any of the hogs described in the indictment; that it amounted to a charge that if the jury believed that one hog was the property of J. M. Windsor, they would be authorized to find the defendant guilty, if they believed he fraudulently took and carried away, with intent to steal, any of the hogs described in the indictment which did not happen to be the property of J. M. Windsor. This charge is further excepted to on the ground that it in effect instructed the jury that the defendant was guilty if he stole any one of four hogs described in the indictment, and the ownership of one of the hogs described therein was in J. M. Windsor, "whereas it was alleged in the indictment that the ownership of all of the hogs was in J. M. Windsor, that the defendant would be guilty, if he stole the hog which the evidence did not show was the property of J. M. Windsor." Lastly this charge is objected to on the ground that "if the jury had believed that the defendant unlawfully, wrongfully, and fraudulently carried away the black sow described in the indictment, yet the jury would not have been authorized in finding the defendant guilty, for the reason that the ownership of said hog was not proved to be in J. M. Windsor, as was alleged in the bill of indictment."

We do not think there is any merit whatever in the various exceptions to this charge. In the first place the indictment does not charge the defendant with taking any sow whatsoever; nor does it charge him with stealing *four* hogs; only *three* are mentioned in the indictment, and the ownership of these three is alleged to be in J. M. Windsor. One of the hogs the defendant is charged with stealing was a "black barrow hog with white front feet, of the value of three dollars," another was an "unmarked female hog, being a black shoat of the value of eleven dollars," and the third and last hog mentioned in the indictment was "one unmarked black male hog, being a shoat of the value of one dollar." The evidence discloses that the black sow, referred to in this ground of the motion

for a new trial, was marked, and the mark was different from that of Windsor's, and was unknown to him. The only female hog described in the indictment is described as an unmarked shoat; and assuming that a jury, drawn from an agricultural section, had sufficient intelligence to understand that a distinction and difference existed between a "shoat" and a "sow," it is safe to assume that no confusion could have arisen in their minds as to what particular female hog the defendant was charged with stealing. Nor do we see how this instruction would have authorized the jury to find the defendant guilty in the event they believed that he had stolen the sow which the witness Windsor testified was not his property, and which the defendant claimed he had in some way obtained from his stepfather. The court expressly restricted the jury to the three hogs described in the indictment, and charged them that if the defendant unlawfully, wrongfully, and fraudulently took and carried away these particular hogs, or any one of them, and the jury should believe that these three hogs (described in the bill of indictment, and plainly not including the sow which is not therein described), or any of these hogs (referring unmistakably to the three hogs described in the indictment alone) were the property of J. M. Windsor, then the offense of larceny would be made out, etc.

Even had the indictment included, in addition to the three hogs alleged to be the property of Windsor, the sow which was found in the buggy of Cartledge, and which under the evidence was not the property of Windsor, the charge complained of would not, on close analysis, be subject to the objection that it would have authorized the jury to find the defendant guilty, in case they believed the defendant had stolen a hog (the sow) which was not the property of Windsor. The plain meaning of the charge was that if the jury believed that the defendant unlawfully, wrongfully, and fraudulently took and carried away the hogs described in the bill of indictment, or any one of them, with intent to steal the same, and if they believed such hogs (the hogs described in the indictment, which the defendant took and carried away, etc.), or any one of the hogs described in the indictment, to be the property of Windsor, the defendant would be guilty. In other words, under this charge the jury were not authorized to convict unless they believed that the defendant stole a hog described in the indictment which was the property of J. M. Windsor.

3. The last ground of the motion for a new trial complains that the court failed to charge the jury (though not requested so to do) upon the law as to the force and effect of circumstantial evidence in criminal cases. It is well settled that it is only where a case is solely dependent upon circumstantial evidence that the court is required to instruct the jury as to the law on such evidence; and where the charge in the indictment is supported by both circumstantial and direct evidence, it is not error for the court to fail to give in charge the law on circumstantial evidence. *Nobles* v. *State,* 127 *Ga.* 212-213 (56 S. E. 125); *Day* v. *State,* 133 *Ga.* 434 (66 S. E. 250); *Benton* v. *State,* 9 *Ga. App.* 422 (71 S. E. 498). In this case the circumstances connecting the defendant with the crime were supported by direct testimony. Cartledge testified that the defendant and himself pursued and caught four hogs in a field near the defendant's home, with the help of dogs, on the afternoon before Cartledge himself was found in possession of two of them, and that the defendant turned over two of the hogs to him, to fatten one of them and to raise pigs from the other, on halves,—the defendant claiming that the hogs were his property. Windsor testified that the defendant knew that the two shoats which were discovered in the pen near his house belonged to him (Windsor); and that the defendant made an effort to compromise the case. This testimony as to the taking and disposition of the hogs directly connected the defendant with the crime alleged, and the evidence of Windsor was direct evidence of knowledge and intent; for while his testimony that the defendant knew the hogs belonged to him (Windsor) may have been a mere conclusion of the witness, the evidence was not objected to, and may have been based, for aught we know, on some express statement made by the defendant at the time the hogs were discovered in his pen by Windsor, or previously, or on other facts conclusively showing knowledge.

The trial appears to have been free from error, and a jury of the vicinage who heard the witnesses testify, and who observed the demeanor of the defendant on the stand, and had the best opportunity to weigh and determine the value of all the testimony, found the defendant guilty; this verdict was approved by the judge who tried the case; and since the evidence is amply sufficient to sustain the verdict, it is not in our power, nor is it our desire, to set aside the judgment overruling the motion for a new trial, on the general grounds thereof. *Judgment affirmed. Broyles, J., not presiding.*