19820.   EDENFIELD *v.* THE STATE.

DECIDED AUGUST 23, 1929.

*R. Lee Moore, William Woodrum, James A. Dixon, Frank M. Oliver,* for plaintiff in error.

*W. G. Neville, solicitor-general, G. C. Dekle, H. A. Boykin, J. C. Hollingsworth,* contra.

BLOODWORTH, J.   We will enlarge upon the 2d headnote only. The 7th ground of the amendment to the motion for a new trial is as follows: "The defendant, Joseph J. Edenfield Jr., in his statement, submitted to the jury his version of the substance of the testimony given by certain witnesses for the defendant, George T. Edenfield, on the previous trial of George T. Edenfield, charged with murder under the same indictment, to wit: witnesses Dr. C. Thompson, Madison Mills, James A. Dixon Jr., and others. The State, in rebuttal, swore as a witness P. W. Martin, the official court reporter, and submitted to said P. W. Martin a brief of the testimony in the trial of George T. Edenfield, prepared by him from stenographic notes made by him during the trial of George T.

Edenfield, and proved by the said stenographer that the brief of the testimony of the witnesses Dr. C. Thompson, James A. Dixon Jr. and Madison Mills was correct; the purpose being to contradict and impeach certain parts of the testimony of Dr. C. Thompson, James A. Dixon Jr. and Madison Mills, as recited by the defendant, Joseph J. Edenfield Jr., in his statement to the court and jury. To the introduction of specified parts of the testimony of said Dr. C. Thompson, and said James A. Dixon Jr., and said Madison Mills, defendant objected, and for ground of objection urged that the introduction of this testimony for the purpose of contradicting and impeaching the testimony of said witnesses, as recited by the defendant, was improper, as the witnesses themselves were accessible, in court, and the witnesses themselves should be put on the stand for the purpose of impeaching those parts of the statement of the defendant. Thereupon the court ruled that if the State offered a part of the testimony of any witness who had testified on the former trial, the whole of the testimony would have to be admitted, as a part of it could not be admitted without all of it being admitted. To this ruling of the court the defendant assented in so far as the introduction of the entire record testimony of said witnesses in the trial of George T. Edenfield would be considered as substantive testimony for the State and not for the defendant, Joseph J. Edenfield Jr., in the pending case, and accordingly the record testimony of said witnesses on the trial of George T. Edenfield was introduced by the State. Later in the trial of said case on the following day the State swore Claude Sullivan as a witness for the State and propounded to the said witness the following question : 'What did Dr. Thompson state to you and to me and to James Joyner, your brother-in-law and the brother of the dead boy, caused this man's death?' Whereupon the defendant objected to testimony to be elicited by said question, on the grounds: 1st. That it would be hearsay testimony of a witness who is present and accessible. 2d. That the State was seeking to impeach its own witness, Dr. C. Thompson, whose testimony given on the trial of George T. Edenfield and recorded in the brief of evidence of that trial had been introduced by the State. 3d. That the State had not laid the foundation for impeaching its own witness, Dr. C. Thompson, by claiming that it had been misled or entrapped by Dr. C. Thompson, nor had the State offered Dr. Thompson in person as a witness

and brought to the attention of Dr. Thompson, before offering to impeach the testimony of Dr. Thompson, the time and place in question, and the statement alleged to have been made by Dr. Thompson which the State was now seeking to introduce for impeachment purposes; which said objection of the defendant the court overruled and stated: 'I will let in the testimony for the purpose of impeaching Dr. Thompson and not for the purpose of establishing a fact.' Thereupon the said witness, Claude Sullivan, testified as follows: 'A. Dr. Thompson stated that he found two very severe places on the head, right at the base of the skull, and he went on to say that he died from dilatation of the heart, and you asked him what caused the dilatation of the heart, and did those places on the head cause the dilatation of the heart, and he said they did, and you asked him which one of those places would probably cause the dilatation, and he said either of them. You also asked him the question whether it was possible that these places could have been produced by the human fist, and he said it was highly improbable that the human fist could have produced them.' And the court, having illegally admitted for the consideration of the jury the testimony of the witness Claude Sullivan as above recited, committed fatal error against this defendant." The 8th ground of the amendment to the motion is substantially the same as the 7th, except that the witness whose testimony was offered to impeach Dr. Thompson and whose testimony was objected to was James Joyner, who testified as follows as to the evidence of Dr. Thompson: "He said he found two severe wounds and several scratches, one severe wound at the base of the skull and the other on the right temple. He said that either of them would have produced death, he thought. He explained something about dilatation of the heart which I did not understand. He said that the licks on the head produced the dilatation. He said that he did not think that the licks these wounds showed could have been done by a man's fist."

We think that it was error to admit the testimony of Sullivan set out in the 7th ground of the motion and that of Joyner set out in the 8th ground of the motion, because no foundation had been laid in either instance for the introduction of such evidence as provided by section 5881 of the Civil Code and section 1052 of the Penal Code of 1910. In discussing the rule laid down in § 5881

of the Civil Code, and citing a number of decisions to support the statement, the Supreme Court, in *Estill* v. *Citizens & Southern Bank,* 153 *Ga.* 627 (113 S. E. 552), said: "The general rule stated in this code section was early recognized by this court, and has been uniformly followed in many cases." See *King* v. *State,* 166 *Ga.* 10 (2) (142 S. E. 160); *Raleigh & Gaslon Railroad Co.* v. *Bradshaw,* 113 *Ga.* 862 (3) (39 S. E. 555); *Allen* v. *Mayor &c. of Carrollton,* 14 *Ga. App.* 403 (81 S. E. 252).

As a new trial must necessarily follow the foregoing rulings, we deem it advisable to call attention to the fact that the defendant should not be allowed to read to the jury "a prepared statement, prepared by his counsel" in which is quoted, some of it verbatim, as taken down by the stenographer, the evidence of certain witnesses in a different case even though growing out of the same transaction, especially without preliminary proof of the genuineness of such evidence. In *Woodward* v. *State,* 5 *Ga. App.* 449 (4) (63 S. E. 573), Chief Judge Hill said: "The defendant, in making his statement to the jury, started to read certain letters, which he stated he had received from the female alleged to have been seduced by him. The solicitor-general objected to the introduction of the letters in this manner, and the court sustained the objection, but stated to the defendant that he might state that he got the letters, and state their contents, but could not read the original letters as a part of his statement; that he could not make profert of the letters to sustain his statement. The defendant thereupon stated that he had received the letters, and that they were written by the female alleged to have been seduced by him, stated their contents fully to the jury, and in this way got the full benefit of the letters. Speaking for myself, I think the judge in his ruling was as favorable to the defendant as the law required him to be. While the statute giving to the defendant the right of making a statement in his defense is unlimited, except by what he himself may consider proper to state in his defense, yet I do not think that it was ever intended by the statute to permit the defendant to introduce documentary evidence as a part of his statement, without preliminary proof as to the genuineness of such evidence, or at least without submitting such documentary evidence to the State's counsel for examination. . . But without discussing this question further, the ruling by the court on this point is fully sustained by the Supreme Court in

*Nero* v. *State,* 126 *Ga.* 554 (55 S. E. 404); *Freeney* v. *State,* 129 *Ga.* 759 (59 S. E. 788); *Nobles* v. *State,* 127 *Ga.* 212 (56 S. E. 125); *Crawford* v. *State,* 117 *Ga.* 247 (43 S. E. 762.); *Wells* v. *State,* 97 *Ga.* 210 (22 S. E. 958)." In *Nobles* v. *State,* 127 *Ga.* 212 (4) supra, Mr. Justice Atkinson said: "The privileges of the accused under the law allowing him to make a statement to the jury are exceedingly broad. But the right to make a statement can not be legitimately used as a vehicle to convey to the jury documentary evidence which has not been formally offered in evidence. If the accused desires the full benefit of evidence of this character, he must introduce the same in evidence and take the consequences of offering evidence, thereby forfeiting the right to a concluding argument by his counsel. See, in this connection, *Nero* v. *State,* 126 *Ga.* 554." In *Nero* v. *State,* supra, Mr. Justice Evans said: "The defendant was convicted of burglary. The only assignment of error in his motion for a new trial which we deem of sufficient importance to specially notice is that relating to the right of the defendant to read to the jury as a part of his statement a letter which he stated had been received by him. Under our system of criminal procedure, the defendant is given the right to make a statement. This privilege is accorded the defendant so that he may acquaint the jury with his version of the matter under investigation, and may make reply to the charge against him by way of denial, explanation, or avoidance. In availing himself of this privilege, the accused is not hampered by strict rules of evidence (*Vaughn* v. *State,* 88 *Ga.* 735, 16 S. E. 64), but at the same time he may not indulge in a long, rambling, and irrelevant harangue. *Loyd* v. *State,* 45 *Ga.* 58; *Coxwell* v. *State,* 66 *Ga.* 310. The prisoner must have some regard to relevancy and the rules of evidence, for it was never intended that in giving his narrative of matters pertaining to his defense he should attempt to get before the jury wholly immaterial facts or attempt to bolster up his unsworn statement by making profert of documents, letters, or the like, which if relevant might be introduced in evidence on proof of their genuineness. Without such proof he can not place them before the jury as corroborating evidence of what he says; it would be extending his privilege far enough to accord him the right of making a statement to the effect that he had received a document or letter

of a certain purport, without permitting him to produce the same and read it for the purpose of convincing the jury of its existence or genuineness. If he desires to corroborate his statement by documentary evidence, the writing itself should be offered in evidence in the usual and regular way; and if the writing be immaterial or for any other reason inadmissible, then for a greater reason should the defendant be denied the privilege of making profert of it and reading it to the jury as a part of his statement. In *Montross* v. *State*, 72 *Ga.* 262 (53 Am. R. 840), the prisoner was restrained from reading to the jury extracts from a newspaper; and in *Wells* v. *State*, 97 *Ga.* 210 (supra), this court distinctly ruled that it was not error to refuse to allow the accused to read a letter as a part of his unsworn statement." See *Allen* v. *State*, 150 *Ga.* 706 (3) (105 S. E. 369); *Wells* v. *State*, supra; *Calhoun* v. *State*, 30 *Ga. App.* 263 (3) (117 S. E. 771), and cit.

    *Judgment reversed.* *Broyles, C. J., and Luke, J., concur.*