25708. COLLINS, *alias* JOHNSON, *v.* THE STATE.

Decided September 18, 1936.

*W. L. Nix,* for plaintiff in error.

*Clifford Pratt, solicitor-general, P. Cooley,* contra.

GUERRY, J. ■ The Code, § 26-6001, declares that "Any person who shall, by persuasion and promises of marriage or other false and fraudulent means, seduce a virtuous unmarried female and induce her to yield to his lustful embraces and allow him to have carnal knowledge of her, shall be punished by imprisonment and labor in the penitentiary for not less than two nor more than 20 years." This section does not contemplate an additional punishment for adultery or fornication (*Wood* v. *State*, 48 *Ga.* 193, 295, 15 Am. R. 664), but in part it aims at the prevention of a pending engagement to marry, and the confidence and sacred relationship thus established, being made the tool whereby a "virtuous unmarried female" is induced and led into the act of sexual intercourse with the promisor. Thus the above section may be "satisfied by courtship or wooing resulting in an engagement to

marry, *and by the successful use of that engagement,* on the part of the suitor, to accomplish the ruin of a virtuous and confiding woman." *Wilson* v. *State,* 58 *Ga.* 328. · In the present case the prosecutrix testified that the defendant, after paying court to her for some time, made proposal of marriage to her, and that in consequence of that they became engaged; that about three months thereafter he made to her improper proposals to have sexual intercourse, "and I told him no, and he made me anyhow; he told me we would marry right then. He told me he loved me, and I loved him, and that was the reason I yielded. . . Yes, sir, this occurred more than once, three or four times; it would be on the same basis, just promised he would marry me, he said he loved me, and I loved him too, and I thought he was truthful until he did like he did." This testimony proves the existence of an engagement to marry between the parties and the prosecutrix's faith in her lover, the defendant, and his use thereof to induce her to yield herself to him. However, the defendant contends that from her very testimony the charge of rape might be sustained against him, but that the crime of seduction was not proved; for she testified that defendant "made her do it," that he "forced me to do it," and against her protest "he just went on and done it anyhow." Would not this be too narrow a construction to be put upon this testimony, and one by which the jury itself was not bound? What virtuous woman would not to some extent rebel upon her surrender of chastity, and, though mentally objecting, surrender herself bodily and without show of physical resistance? In *Jones* v. *State,* 90 *Ga.* 616 (16 S. E. 380), Lumpkin, J., said: "Sexual intercourse resulting from seduction must necessarily be committed and accomplished with the consent of the female. This is an essential and indispensable element of this particular crime. Rape, being the carnal knowledge of a female forcibly and against her will, necessarily implies the entire absence of consent on her part. It follows, plainly enough and without argument, that a rape can not be made the basis of a prosecution for seduction. . . While this is manifestly true, it can scarcely be doubted that no modest girl or woman, upon the occasion of her first carnal contact with a man, will readily submit to the intercourse without some reluctance and some show of resistance. . . The coyness, shyness, and modesty which actuate a virtuous woman on such an occasion

naturally find expression in the manifestation of some degree of unwillingness, or of an endeavor, feeble though it may be, to shield herself from that to which she is averse, but to which she really consents only for the sake of the man she loves and trusts. . . That a woman exhibits hesitation, reluctance, and a slight degree of physical resistance does not by any means make the intercourse, when accomplished, rape." In the present case there can be no doubt that the female did yield herself to the defendant. The act took place in a room of the home of the prosecutrix, while her family were in calling distance in adjoining rooms. It would certainly be monstrous to hold that under these circumstances she did not, though perhaps reluctantly, give her consent to his act.

The indictment charged the defendant with seduction by "persuasion and promises of marriage," and did not charge him with committing the crime through "other false and fraudulent means." He complains that the court erred in giving in charge to the jury the entire section of the Code, thus leading them to believe that he was thus accused and could be convicted of seduction by "other false and fraudulent means." We do not think there is any merit in this complaint. After giving to the jury the definition of the offense as it is written in the Code, the judge further charged: "Now, to constitute the offense of seduction, there must be something more than a mere promise of marriage. The woman can not consent to give up her virtue simply in consideration that the man promised to marry her; if nothing more should appear, it is not seduction. If you should find this to be the case, the defendant would not be guilty of seduction; but if you find that they had sexual intercourse with each other, the defendant would be guilty of fornication. *To make out a case of seduction there must be persuasion and promise of marriage.* . . To make love to a virtuous unmarried female, woo her, make honorable proposals of marriage, have them accepted, and afterwards undo her under solemn promises of marriage, is to imply persuasion as well as promises of marriage. Whether this has been shown or not in this case is a question solely for the jury to determine." From this it is plain that the judge made it clear, that the defendant was charged with seduction, by "persuasion and promises of marriage." Furthermore, there was no evidence that indicated the defendant had used "other false and fraudulent means." In the above particu-

lars this case differs from *Barton* v. *State,* 51 *Ga. App.* 178 (179 S. E. 750).

■ The remaining assignments disclose no error. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*