27045. WHITE *v.* THE STATE.

418

DECIDED SEPTEMBER 27, 1938.

*J. T. Sisk,* for plaintiff in error.

*A. S. Skelton, solicitor-general, Howard B. Payne,* contra.

MACINTYRE, J. Ora B. White was indicted for the offense of seduction. The jury returned a verdict of guilty. The defendant's motion for new trial, based on the general grounds, was overruled, and he excepted.

Maggie S., witness for the State, testified that she was twenty-three years of age in October, 1936, and was twenty-one at the time of the alleged transaction with the defendant. She had known the defendant for about nine years, and he came to visit her about twice a month during that period. He first asked her to marry him on December 25, 1933, and she agreed. "I was in love with him. What he said to me made me believe he was in love with me—he told me that he loved me better than any one he had went with, and he told me that I was the first girl that he ever courted. That was December, 1933. I never allowed him to have intercourse with me at the time. This conversation took place at my home. The next time I saw him was the 18th of February, 1934." On the night of February 18, 1934, the defendant was bringing her from her home to Elberton, and asked her for intercourse, and promised to marry her. He said they were already engaged, and he did not think there would be any harm for them to have intercourse. "I refused . . at first, and he overpersuaded me," but finally she agreed to have intercourse with him. "What caused me to agree to it was because I had confidence enough to believe what he said. . . He never begged me any more, and never asked me any more. I became pregnant, and a child was born on November 11, 1934, and it is living. I told him about the condition I was in . . in April. There was no reason why I waited so long to tell him. Ora had told me he was coming back when I told him about it, and . . he said he would set a date and we would get married. But there was no date set. . . He didn't come back any more until July. They

[he and his father] come to see me about marrying, and he said he wasn't ready to marry and he wasn't able to marry. That was the first time I remember him saying he wasn't able to marry me. I know George Maxwell. He didn't spoil me or try to. I know Earl Speer. I never had intercourse with him. It is not a fact that I got to be a noted character among the boys for handing things out, or that I would go with married men as well as single. . . He promised he was coming back, and didn't come."

Earl Speer, witness for the defendant, admitted courting Maggie S. in 1930 and 1931, but denied having sexual intercourse with her, and denied having told counsel for the defendant he had had such relations with her. George Maxwell, for the defendant, testified that he had courted Maggie S., but he never had sexual intercourse with her, and that he had not told counsel for the defendant he had had sexual intercourse with her. Further, that the defendant offered him $10 to swear for him, but he refused.

In his statement at the trial the defendant said he had been to see Maggie S. about three times that summer. "I didn't go back any more after then. I didn't go back any more, because I had heard there was people going with her, and I had been going with her, and they told me there was something wrong with her. I asked George and Earl if they had been going with her. They had been going with her too, and they told me they had it too."

J. T. Sisk, counsel for the defendant, swore that soon after he was employed by the defendant he asked the defendant to bring George Maxwell and Earl Speer to his office. "I don't think they came together, and each one of them told me that on several occasions they had intercourse with this woman prior to the time this boy was charged with it, and they told me they would swear it. Since then I haven't seen them, except to-day."

John Starke, sheriff, a witness for the State, testified that Earl Speer was put in jail because he could not make bond to appear as a witness; and that George Maxwell made his bond, and was released. John S., father of Maggie S., testified that the defendant had been coming to see his daughter for several years, and that he didn't allow her to go off riding with boys. When he found out she was pregnant, he went and talked with the defendant and his father, and they came and talked with Maggie. "Ora didn't deny it at all, and never did, and didn't say he wasn't the

man; he just said he wasn't able to marry right now. He has never admitted it, but he ain't denied it; he ain't never said." Bell W., married sister of Maggie S., testified for the State, that the defendant begged her to let Maggie go with him on the occasion in question. "They were going to my father's. He told me that he loved Maggie and wanted to marry her, but she didn't seem to care for him. She didn't ride with so many boys, and she didn't ride with Earl Speer. My father didn't allow boys to come to see her and ride. She didn't go to church with boys or to parties."

■ The Code, § 26-6001, declares: "Any person who shall, by persuasion and promises of marriage or other false and fraudulent means, seduce a virtuous unmarried female and induce her to yield to his lustful embraces and allow him to have carnal knowledge of her, shall be punished by imprisonment and labor in the penitentiary for not less than two nor more than twenty years." It is contended by counsel for the defendant that the testimony of Maggie S. shows that she simply entered into a meretricious trade with the defendant, by which she consented to sexual intercourse, and that the evidence failed to make out a case. It is true "that if a single woman allowed an unmarried man to have intercourse with her solely because of a promise by him to marry her, it would be merely a meretricious transaction; that in such cases the defendant would be guilty of fornication but not of seduction." *Pough* v. *State*, 7 *Ga. App.* 610 (67 S. E. 695). However, if a promise of marriage is accompanied with persuasion and the intercourse is obtained, the crime of seduction is complete. These necessary acts of seduction, a promise of marriage and a persuasion, "may be satisfied by courtship or wooing, resulting in an engagement to marry, and by the successful use of that engagement, on the part of the suitor, to accomplish the ruin of a virtuous and confiding woman. . . Where consent is given, pending a virtuous engagement, in consequence of a repetition of a promise to marry already made and accepted, the woman yielding in reliance on the plighted faith of her lover, and he intending that she shall trust and be deceived, the case is one of seduction. To make love to a woman, woo her, make honorable proposals of marriage, have them accepted, and afterwards to undo her under a solemn repetition of the engagement vow, is to employ persua-

sion as well as promises of marriage." *Wilson* v. *State,* 58 *Ga.* 328, 331; *Woodard* v. *State,* 5 *Ga. App.* 447 (5) (63 S. E. 573); *Collins* v. *State,* 54 *Ga. App.* 246 (187 S. E. 627). In *Martin* v. *State,* 53 *Ga. App.* 213 (185 S. E. 387), it was said: "Evidence which authorized the jury to find that the defendant paid attention to and courted a young girl for several years, gained her confidence by an engagement to marry, and then betrayed that confidence by inducing her, by repeating the promises to marry, to have sexual intercourse with him, and that she did submit to him because of the confidence thus instilled in her, which is generally presented between those engaged to be married, and because of his repeated promise of marriage at the time, will support a verdict of seduction."

Thus it will be seen, under the evidence in the present case, that the defendant had been courting Maggie S. for about nine years, visiting her twice each month during that period. They became engaged approximately two months before the alleged transaction, at which time, as the prosecutrix testified, he said "we was already engaged, and he did not think there would be any harm for us to have intercourse. . . I refused . . at first, and he overpersuaded me. . . It is a fact that what took place between us was that he begged me, . . and I finally agreed. .· . What caused me to agree to it was because I had confidence enough to believe what he said." Under these circumstances the jury were authorized to find against the contention that this was merely a meretricious trade entered into by the woman alleged to have been seduced. In his statement the defendant said that he had visited her about three times during the past summer, and that two other men had had intercourse with her before the time of the alleged transaction. Both men emphatically denied this at the trial. The defendant did not otherwise admit or deny the charges set forth in the indictment; and he was silent on the subject of the engagement. The evidence authorized a finding that the woman had not been previously married, and had not had sexual intercourse before or after having it with the defendant. We are of the opinion that the evidence warranted the verdict, and that the court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*