## HOLTON v. THE STATE.

1. False representations acted on by another, in consequence of which he was cheated and defrauded, must, to be the basis of a prosecution for cheating and swindling, relate either to the present or to the past. A promise relating to the future can not be the basis of a prosecution for this offense. But where there is both a false pretense and a promise which acted together on the mind of the person defrauded and induced him to part with a thing of value, and he would not have done so on the promise without the pretense, such a pretense, if false, is sufficient to support a conviction for being a common cheat and swindler.
2. A representation by one that he has title to a named lot of land, made for the purpose of inducing another to purchase it, if false within the knowledge of him who makes the representation, is within the statute against cheating and swindling.
3. If by deceitful means or artful practices one is induced to give to another his negotiable note promising to pay a given sum at a named date, whether as a matter of fact the maker is or is not insolvent, he is nevertheless defrauded and cheated.
4. There was no error in the charges, nor in the refusals to charge, nor in the rulings of the court of which complaint is made. There was ample evidence to support the verdict, which was not contrary to law.

Submitted October 4, — Decided October 27, 1899.

Accusation of cheating and swindling. Before Judge Williams. City court of Waycross. June term, 1899.

*G. J. Holton & Son* and *J. Walter Bennett*, for plaintiff in error.
*J. L. Crawley, solicitor*, and *L. A. Wilson*, contra.

LITTLE, J. 1. An accusation was preferred in the city court of Waycross against the plaintiff in error, charging him with the offense of cheating and swindling. On the trial of the case the evidence of the State tended to establish the following

facts: Holton approached M. S. and J. L. Lee and asked them to purchase a certain lot of land in Ware county, being a wild lot, and represented to them that it was owned by one Conally, and that he had a power of attorney from Conally to sell the land. He represented the title of Conally to be a good and genuine title, superior to any other claim of title to the lot, Holton promising at the same time to defend the title if any adverse claim should be made against it. The purchasers relied upon the representations that the title was good, and also upon the promise of Holton that he would defend the title to the same. Under these representations and this promise, M. S. and J. L. Lee purchased the land for four hundred dollars and gave their promissory notes for the same, one for $150, all of said notes being due in the future and at different dates. During the negotiations M. S. Lee told Holton that he had heard that the Southern Pine Company had a claim on the lot. Holton stated in reply to Lee that the title he had was superior to any claim of title by the Southern Pine Company or any one else. Soon after they entered into possession of the land the Southern Pine Company applied for an injunction restraining them from cutting the timber. Lee called on Holton, who lived in Appling county, to defend the title. He referred Lee to a firm of lawyers in Waycross, whom Lee consulted, and was advised that the chain of title which he received from Holton was forged. Lee interposed no defense. The injunction was granted. In the meantime Holton had traded off one of the promissory notes of Lee and received in exchange therefor his own personal obligation. This note was sued upon, and a judgment obtained thereon against M. S. and J. L. Lee. Neither of them had ever paid any money on the judgment, and it was probable that they were insolvent. At the time of the trade for the land, Lee called Holton's attention to the fact that he did not have the original plat and grant; to which Holton replied that it was at 'his home, and that Lee could get it any time he came for it. On the trial of the case it was admitted that all of the deeds received by Lee from Holton were forged, with the exception of that made to Lee. There was much other evidence to which, for the pur-

poses of this opinion, it is not necessary to make reference. The defendant contended, that if the title was forged he had no knowledge of it, and that when the application for injunction was filed he proposed to the brothers Lee that if they would convey the title to him he would defend it. He denied making any promise, and otherwise controverted many of the statements made by witnesses for the State. The jury returned a verdict finding the defendant guilty. He made a motion for a new trial, which was overruled, and he excepted. Besides the general grounds that the verdict was contrary to law and the evidence, certain rulings and charges of the trial judge were alleged to be error, in the motion for new trial. These, however, can be disposed of by the determination of certain contentions urged in the brief of counsel for plaintiff in error, which are: First, if the purchasers bought the land on the faith of a promise made by Holton in the nature of a false representation that he would defend the title, a prosecution for this offense would not lie. Second, whether the title which Holton had was the true title or not was a matter of opinion, and was so recognized by the purchasers when they took Holton's promise to stand between them and all damage. Third, it was not shown either that Holton got a thing of value, or that the brothers Lee suffered any loss.

The statute for the violation of which the plaintiff in error was charged declares that any person using any deceitful means or artful practices, other than those which are expressly mentioned in the code, by which an individual or the public is defrauded and cheated, shall be punished as for a misdemeanor. It is a sound proposition of law, that false representations, to be the basis of a prosecution for cheating and swindling, must relate either to the past or to the present. *Miller* v. *State*, 99 *Ga.* 207. It therefore follows, that any promise or statement as to what may occur in the future, however false, will not serve as a basis for such a prosecution, because a promise is not a pretense. *Ryan* v. *State*, 45 *Ga.* 128. But it by no means follows that a prosecution may not be maintained, when in connection with a promise a false representation has been made. On this subject Mr. Bishop, in his work on Criminal Law (vol.

9

2, § 424), says: "It would be difficult to find in actual life any case wherein a ·man parted with his property on a mere representation of fact, whether true or false, without an accompanying· promise.. If, therefore, we look at the promise simply as a nullity, it does not impair a simultaneous false pretence, considered as a foundation for an indictment." And, citing a number of cases, he says, in section 427, that "The conclusion to which the foregoing views leads us accords with what the English judges have held, that where the blended pretence and promise, acting together on the mind of the defrauded person, were the inducements to part with his goods, and he would not have done it by reason of the pretence alone without the promise, the case falls still within the statute." This point has, however, been exactly decided in the case of *Thomas* v. *State,* 90 *Ga.* 437, where the court held that the offense of cheating and swindling may be committed by a false representation of a past or existing fact, although a promise be also a part of the inducement to the person defrauded to part with his property. We understand from the evidence that the purchasers of the land testified that they would not have given their notes and received a deed if plaintiff in error had not represented to them that the title which he held was the true and genuine title and superior to any outstanding, nor would they have purchased even under this representation but for the promise that he would defend the title in the future. Under the authorities above cited, the promise may be rejected as being of no avail in this prosecution and entirely insufficient to support a conviction, but, having eliminated it, the representation as testified to remains, and if false, and the purchasers were defrauded and cheated, that representation, even though accompanied with the promise, was sufficient to support the conviction.

2. It is further contended, however, that whether the title which Holton had to the land was the true and genuine title was a matter of opinion, and any representation, however false, which expresses the opinion of the person, can not be made the basis for such a· prosecution. It is an established rule that a pretense, to be criminal, must be of a fact as distinguished from the state of the speaker's mind, and of a nature

to be known by him. 26 Iowa, 262; 41 Tex. 65; 84 N. C. 751; 35 Mich. 36. But if one represents a thing to be true when he knows it is not, such representation falls within the statute, because it is a pretense of the facts and not a mere opinion. 64 Me. 157; 95 N. C. 663. Mr. Bishop in discussing this question says, in his Criminal Law, vol. 2, §454: "When two men are negotiating a bargain, they may express opinions about their wares to any extent they will; answering, if they lie about their opinions, only to God, and to the civil department of the law of the country. But when the thing concerns fact, as distinguished from opinion, and a man knowingly misstates the fact, his words amount to a false pretense."

It has been several times ruled that the false pretense of having title to property, or of its being unencumbered by mortgage, made by one offering it for sale, is within the statute. 1 Mo. 248; 11 Allen, 233; 11 Cox C. C. 270. See also 65 Iowa, 452. And this is equivalent to ruling that a representation as to ownership of property, when false, is a representation of a fact and not of opinion, and therefore sufficient to support a prosecution.

3. But it is contended that, even if the representations were false and so known, it is not shown that Holton got a thing of value, or that the purchasers of the land suffered any loss. In other words the proposition is, that a promissory note of an insolvent person obtained by means of false pretenses is not such a defrauding and cheating of the maker of the note as will support a prosecution for cheating and swindling. It will not be doubted that if one by deceitful means or artful practice is deprived of any valuable thing, the one so deprived is both defrauded and cheated. In the case of State v. Thatcher, 6 Vroom (N. J.), 445, Van Syckel, J., in discussing what property must be obtained in order to constitute the offense, said: "Is the maker's own note or contract of suretyship a valuable thing? The signing of the name was an act—the name when signed was a thing. Was it a thing of any value? While it remained locked up in his secretary, it was of no value to the maker, but eo instanti it passed out of his hands by the fraud, it became impressed with the qualities of commercial paper,

and possessed to him the value which it might cost to redeem it from a bona fide holder. . . Can.it, therefore, be said that a paper which imposed such a risk was of no value to the maker? Its value to him consisted, not in what it would put in his pocket if he retained it, but in what might be taken out of his purse by the delivery of it to the defendant." See also 5 Dutcher, 13; 7 Metcalf, 475. In the case of People *v*. Reed, 70 Cal. 529, in construing a section of the Penal Code of California which declared that "Every person who knowingly and designedly, by false or fraudulent representation or pretenses, defrauds any other person of money or property, . . and thereby fraudulently gets into possession of money or property, . . is punishable," etc., it was held that a promissory note is personal property and may be the subject of the offense of obtaining property under false pretenses; it being shown in that case that the accused by false pretenses induced another to make and deliver to him his promissory note for a given sum. And in the case of State *v*. Porter, 75 Mo. 171, it was held that to procure the making and delivery of a promissory note by false pretenses, without regard to the value of the note, or whether it is negotiable or not, was a violation of the statute of the State of Missouri which made it a misdemeanor for any person who, with intent to cheat or defraud another, should designedly . . obtain from any person any money, personal property, right in action, or other valuable thing or effects whatsoever, etc., it being held that such a note was a valuable thing within the meaning of that section. While these rulings of other courts, construing other statutes, are not binding authority on us in the construction of our statutes, they are precedents founded on sound reason and emanating from judges of ability, after careful consideration. It will not do to say that a written promise to pay money is valueless because the maker is not at the time possessed of property. It is his obligation. Upon it a judgment may be rendered carrying with it a lien on all future-acquired property. We are, therefore, of the opinion that this contention of the plaintiff in error is not sound, but that the promissory note made by the brothers Lee to Holton was, without regard to whether the makers were sol-

vent or insolvent, a thing of value; and that where such a thing is obtained from another by deceitful means or artful practice, that other is defrauded and cheated in the sense of the statute.

4. The jury were authorized to believe the evidence adduced by the State, and it is clearly established not only that the representations were made, but that the purchasers of the land acted thereon, in connection with the promise. It was admitted by the defendant on the trial that the deeds which constituted the chain of Conally's title were forgeries. So that, at the time the defendant executed a conveyance of the land to Lee, Conally had no title. It was further shown that the title was at that time vested in the Southern Pine Company. As a matter of course, if the accused did not know that the deeds were forgeries, but in good faith sold property under the belief that they were genuine, he would not be guilty of any offense. As to whether he knew or did not know this fact was for the jury alone to determine under the evidence. The defendant neither by proof nor by his statement identifies Conally in any way. He simply said that he received the papers by mail, and whether Conally is a myth or a person in esse can not be determined under his statement. He admits selling the land to Lee, and the conveyance shows he sold it as attorney in fact for Conally. It was, therefore, incumbent upon him to at least give some explanation as to who Conally was, where he resided, and the circumstances under which he consented to act as attorney in disposing of the land. The duty of a satisfactory explanation of these matters was put upon him by the evidence, to which he failed to respond. Further, although he conveyed the land as the property of Conally, he not only took the notes payable to himself, but the evidence showed that he traded one of such notes before it matured, in exchange for his own personal debt. The jury were fully authorized from the evidence to find that the accused knew that the title which he represented as genuine was forged, thus completing all of the elements to sustain a verdict of guilty.

*Judgment affirmed. All the Justices concurring.*