## Slaughter v. Commonwealth.

(Decided December 9, 1927.)

### Appeal from Jefferson Circuit Court (Criminal Division).

1. False Pretenses.—Generally the expression of a pure opinion by one prosecuted on ground of false pretenses, and especially on a matter about which there might be differences of opinion, is not

the assertion of a present or past fact, which is an essential element of the offense.

2. False Pretenses.—Statement by defendant that certain property, which he sought to exchange for his own, was not worth exceeding a certain price, is not a false pretense, punishable under Ky. Stats., sec. 1208.

3. False Pretenses.—In prosecution under Ky. Stats., sec. 1208, for obtaining signature to deed by false pretenses, evidence held not to sustain charge in indictment that defendant had stated that city had condemned property which defendant sought to exchange for his own.

4. False Pretenses.—False statement by one seeking to exchange property that his property was free from incumbrances held a false pretense, which Ky. Stats., sec. 1208, and fact that such statement could have been disproved by a search of the records does not render such statement insufficient to support a prosecution.

5. False Pretenses.—In prosecution, under Ky. Stats., sec. 1208, for obtaining signature to deed by false pretenses, it is not necessary, in order to convict defendant, that false representations were such as were calculated to mislead and deceive a person of ordinary prudence and discretion.

HENRY J. TILFORD and CLEM W. HUGGINS for appellant.

FRANK E. DAUGHERTY, Attorney General, and BURWELL K. MARSHALL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The grand jury of Jefferson county returned an indictment against appellant and defendant below, John E. Slaughter, accusing him of the crime of unlawfully, feloniously and falsely obtaining the signature of Jessie Stewart to a deed (the false making whereof would be forgery), by false pretenses, statements, and representations, and with the intention to commit a fraud, one of the offenses denounced by section 1208 of our present Statutes. At his trial thereunder he was convicted, and was punished by confinement in the penitentiary for a period of five years. His motion for a new trial was overruled, and he appeals, and urges through his counsel as grounds for reversal: (1) Error of the court in overruling the demurrer filed to the indictment; (2) error in overruling his motion to acquit him, made at the close of the testimony introduced by the commonwealth and at the close of the whole testimony heard in the case; and (3) erroneous instructions.

Grounds (1) and (2) are bottomed upon the same contentions, and they will be disposed of together. In doing so it becomes necessary to make a brief statement of the facts averred in the indictment, and to which the commonwealth directed its proof. A substantial statement of them for the purposes of this opinion is: That in January, 1925, defendant was a real estate agent in the city of Louisville, and had been for a great number of years. Miss Jessie Stewart was then 70 years of age, and had taught in the public schools of Louisville for more than 25 years; but she had quit teaching at that time. During the years of her employment as teacher she had managed to save some of her earnings, and in 1917 she purchased from defendant a lot on Liberty street (then Green street), near to the junction of it and Thirteenth street, and upon which some four or five cottages occupied by colored people were located. Defendant and Miss Stewart were well acquainted, she having known him from his birth, and he having known her from his earliest recollection, and there was a friendly intimacy between their families, and which also existed between defendant and her. After the purchase of the Liberty street lot, defendant looked after the renting of it for its owner, but did not repair (nor does it appear that he was requested to do so) any of the cottages, except an occasional patching of their roofs. They became very much dilapidated, and required the expenditure of a large sum of money to restore them to modern and perfect conditions. None of them was equipped with plumbing or running water, and the water-closets were detached, outside, cheap inclosures, with open vaults, which the health department of the city finally demanded should be abated, and which demand was communicated to the defendant and his employees assisting him in conducting his real estate agency. On the date above mentioned defendant owned a modern two-story residence in that portion of the city known as the Highlands, and on January 16, 1925, a written agreement was entered into, by the terms of which Miss Stewart agreed to exchange her Liberty street property for defendant's residence in the Highlands, and in that contract defendant represented that the Highlands property was free from incumbrances.

The false pretenses, averred in the indictment, with all other essential allegations to create the offense were

(a) that the defendant falsely represented to Miss Stewart that the Liberty street property owned by her was not worth on the market exceeding the sum of $6,000; (b) that the city of Louisville had condemned it; and (c) that his Highlands property was free from incumbrances, and that, acting upon such representations and pretenses, all of which she believed, she was induced and procured to sign and execute a deed on January 28 following the date of the contract, whereby she conveyed her Liberty street property to defendant. The contention embodied in the two grounds now under consideration was and is that neither of the pretenses (a), (b), nor (c), if true, was sufficient in law to constitute the offense denounced by our statute, supra, and for that reason the demurrer filed thereto should have been sustained, but, having been overruled, then the court erred in overruling defendant's motion for an instruction directing his acquittal.

The general rule applied by all courts, and approved by all recognized and standard text-writers, is that the expression of a mere opinion by defendant in this character of prosecution, and especially upon a matter about which there might be differences of opinion, is not the assertion of a present or past fact, which is an essential element of the offense created by the statute. There are some modifications of that general rule, which are applied under certain peculiar facts, but which do not appear in this case, either in the charge contained in the indictment or the evidence heard on the trial. Authorities supporting the general rule as just stated are Roberson's New Kentucky Criminal Law and Procedure (2d Ed.) p. 1184, sec. 960; 25 C. J. 595, par. 19, and cases from 22 states contained in note 33 to the text; 11 R. C. L. 832, par. 10, and cases recited in note 13 to the text; and Bishop's New Criminal Law, vol. 2, p. 246, sec. 429, wherein the general principle is thus stated:

> "It being the common understanding that opinions expressed by persons negotiating in trade are not mutually regarded as facts, on which the listening party is due to base his action, one's false statement as to what is his opinion is not a statutory false pretense. The pretense must be of a fact, as distinguished from the state of the speaker's mind."

That learned author, we repeat, as well as others referred to, recognizes modifications of the general rule

denying the expression of an erroneous opinion the efficacy of a false pretense, for which the one expressing it would be subject to punishment under the statute; but, as stated, the modifying or qualifying facts do not appear in this case, and defendant's contention as to pretense (a) seems to be well founded, and the court erred in holding to the contrary.

Pretense (b) was wholly unsustained by the evidence, as averred in the indictment and as testified to by Miss Stewart in her testimony in chief, but which she qualified to some extent upon cross-examination. It is argued that defendant represented to her that the city of Louisville had succeeded in some sort of condemnation proceedings in appropriating the property on Liberty street; but it clearly appears that, if defendant used the word "condemnation" or the word "condemned" in his negotiations with Miss Stewart, he did so with no intention of creating the impression that such an appropriation of her property had ever been attempted, much less successfully so, by the city of Louisville or any other person. He was quite positive in his testimony that he used no such expressions in his negotiations with the prosecuting witness; but, if he did, they were equally applicable to and expressive of the fact that the health authorities of the city had condemned the insanitary water-closets on the property under consideration, and that under such condemnation a large expenditure would have to be incurred in order to remedy the complained-of conditions. If, as counsel for the prosecution insists, defendant intended to and did represent and pretend to Miss Stewart that her property had been appropriated by some sort of condemnation proceedings, then under another principle of law, applicable to this character of prosecution, it would, to say the least of it, be extremely doubtful if the pretense would be such a one as would be punishable under the statute, since the representation and pretense of a fact that was necessarily within the knowledge of the alleged victim will not support a prosecution. See the work of Mr. Bishop, supra, volume 2, sec. 432. Necessarily, if such condemnation proceedings were instituted, Miss Stewart under the law was compelled to be notified thereof; else the proceedings would be void. But, however that may be, we are convinced that the testimony in the case failed to establish, or tend to establish, this alleged pretense, and the court erred in holding otherwise.

In support of counsel's contention regarding pretense (c), they rely upon this court's opinion rendered in the case of Commonwealth v. Grady, 13 Bush 285, 26 Am. Rep. 192, and which, it must be admitted, is directly in point and fully supports the contention. In that case defendant represented to his victim that the house and lot that the former sold to the latter was "free from lien or mortgage to any one," when the fact was that at that time there was a mortgage upon it to secure a debt, and which was of record. One O'Bannon was the alleged victim in that case, and in holding the facts insufficient to support the prosecution the opinion said:

"O'Bannon could have refused to execute and deliver his notes to appellee, or even to pay him the $125 in money, until he stepped to the clerk's office and ascertained from the records of the Henry county court whether the title to the house and lot was such as represented. . . . Here O'Bannon had the means of detection at hand; for, by a visit to the clerk's office, he could soon have ascertained whether the appellee had the unincumbered title to the house and lot as represented by him." And, since the indictment incorporated the facts, the opinion held that the demurrer filed thereto should have been sustained.

The only authority cited in the opinion and relied on in support of the freedom from prosecution in such cases, if "the party defrauded had the means of detection at hand," was Wharton's Criminal Law, vol. 2, sec. 2129, and which was an early edition of that most excellent work. The section referred to in that edition (2129, volume 2) is now section 1454 of a much later edition in 1912 of the same publication, and it is a part of a subdivision of the entire chapter on the statutory crime now under consideration, and which subdivision is entitled "Prosecutor's Negligence or Misconduct." The preceding section (1453) states the rule that, in prosecutions for the common-law offense of "cheating," it was essential "that the fraud should be latent" (see, also, section 1382 of the same edition); but the text continues by saying:

"It was in part to meet this difficulty that the statute of false pretenses was passed, and under this statute is has been repeatedly held that it matters

not how patent the falsity of a pretense may be, if it succeeds in defrauding. . . . Hence the fact that the prosecutor did not possess or apply peculiar prudence is no defense, when the prosecutor was really imposed upon. Nor is it any defense that the prosecutor, by searching the records of the courts, might have discovered the falsity of the statement.''

In section 1454 of the last edition, and corresponding to the one in the older edition referred to in the Grady case, the learned author states an exception to the general and almost universal rule, as stated by him in the immediately preceding section, and from which we took the above excerpts, as applied by the courts of the state of New York and Pennsylvania and by some English courts, each of which seems to apply the strict rule with reference to the common-law offense of ''cheating'' to the more modern false pretense statutes which Mr. Wharton and Mr. Bishop, as well as other standard authors on the criminal law, emphatically assert were intended to eliminate the strictness and the technicalities thrown around the common-law offense of cheating, and to punish the falsifier and false pretender whensoever he succeeds by his knavery in obtaining the property of another. The excerpts, supra, from the last edition of Mr. Wharton, expressly states such reason for the enactment of the false pretense statutes, and Mr. Bishop, in subdivision 3 of section 410 of volume 2 of his work, supra, says:

''These (false pretense) statutes were enacted to supply defects in the earlier law (the common-law offense of cheating), which, as trade increased, was plainly seen not to go far enough in the protection of fair dealing against knavery.'' See, also, actions 585 and 586 of volume 1 of the same publication.

Therefore Mr. Wharton, in the corresponding section of the last edition of his work to the one referred to in the Grady opinion, refers only to those courts that still adhere to the strictness and technicalities with reference to common-law offense of ''cheating,'' and which he confines to only the states of New York and Pennsylvania. The New York Court of Appeals, in the case of People v. Crissie, 4 Denio, 529, said that the false pretense statute did not apply ''where the party alleged to be de-

frauded had the means of detection at hand." Follow-
ing the almost universal rule, and discarding that of the
courts of Pennsylvania and New York, which form an
exception thereto, this court, in the case of Common-
wealth v. Beckett, 119 Ky. 817, 84 S. W. 758, 27 Ky. Law
Rep. 265, 68 L. R. A. 638, 115 Am. St. Rep. 285, in answer
to the contention bottomed on the Grady case, to the
effect that the false pretense was not within the statute,
"unless calculated to deceive persons of ordinary pru-
dence and discretion," said:

> "This is true only in a limited sense, for the
> statute was not designed to protect only the ordi-
> narily wary and prudent, who, in spite of their vig-
> ilance, might be overreached by the clever rogue,
> but must have been aimed at all scoundreldom, who,
> by false statements or tokens, succeeded in hood-
> winking the unwary, or even the foolish, into parting
> with their property. The statute has a twofold pur-
> pose: (1) To protect the owner of property against
> cheats; (2) to punish the cheater. It cannot be said
> that the law is partial to 'persons of ordinary pru-
> dence and discretion' in protecting them in their
> property, whilst it leaves imprudent and silly per-
> sons as lawful prey for frauds. On the other hand,
> in punishing the wrongdoer, his motive and its re-
> sults are the main subjects of inquiry. Under this
> statute the wicked purpose—the fraud—is equiva-
> lent to the same ingredient in theft. So is the re-
> sult the same. The distinguishing feature is, in theft
> the owner does not intentionally part with the title
> and possession of his property, while under this stat-
> ute he does. It would not do to say that to steal
> from a careless or imprudent person is not punish-
> able, though the statutes against larceny aim to pro-
> tect the owner in the possession of his property, as
> well as to punish the thief who purloins it. Under
> the statute being considered, the pretense or token
> must be false. Where a token is used, it must be
> calculated to deceive, according to the capacity of
> the person to whom it is presented to detect its fal-
> sity under the circumstances. A token that might
> be calculated to deceive a blind man, or one in the
> dark, or a child, would not necessarily be a false
> token, when used upon one who could see, and who
> has mature judgment. Peckham v. State (Tex. Cr.

App.) 28 S. W. 532. Nor would absurd or irrational pretenses, not ordinarily calculated to deceive one of the intellectual capacity and discretion of the person upon whom it may have been practiced, be sufficient, it seems.''

That opinion also explains the holding of this court in the case of Commonwealth v. Haughey, 3 Metc. 223, upon the ground that the misrepresentation or pretense in that case was ''a matter of opinion, not the subject of the statute.'' The opinion also refers to the Grady case, and seems to indorse the doctrine therein announced; i. e., that, if the pretense is a matter of public record, then the means of detection were at hand, and the prosecution would not lie. But what was therein said concerning that case and the doctrine it announced was and is clearly dictum, and as it appears to us was in direct conflict with the reasoning and the logic of what had already been written under the facts of the case, since the false pretense in that case was the representation that a Confederate $10 bill was a United States certificate, or some national bank note that passed as currency, when at that time the prosecutor, or the victim of the false token or pretense, had in his hands and before his eyes the $10 bill that was so falsely represented, and, of course, was possessed with the ''means at hand'' whereby he could ascertain the falsity. The same rule with reference to the character of pretense and the negligence, as well as the vigilance, of the one to whom it was made, as affecting defendant's guilt, is broadly laid down by Mr. Wharton in the latest edition of his work, supra, in section 1455, wherein it is said, inter alia:

''If fraudulent and false pretenses were used, and goods obtained by them, the prosecutor's capacity and opportunities must be considered in determining his culpability. It must also be remembered that the statute assumes some defect in caution, for, if there were perfect caution, no false pretense could take effect.''

The same interpretation and application were applied by us in the very recent case of Finney and Turpin v. Commonwealth, 190 Ky. 536, 227 S. W. 999.

Mr. Roberson, in his new second edition of Kentucky Criminal Law and Procedure, published in 1927,

in section 942, after referring to the Grady case and the rule it announced, criticizes it by saying:

"But the weight of authority is against the proposition, and holds that, where money is obtained by false statements as to title to, or interest in, or incumbrance on, real estate, it is no defense that the true state of the title, or the falsity of the representation, might have been discovered by an examination of the public records in the clerk's office of the county where the land lies. The doctrine of constructive notice, it has been held, does not apply with reference to representations that real estate is unincumbered. It has also been held that 'the rule in a civil action for deceit, under which a prospective purchaser is required to investigate for himself, does not apply in a prosecution for obtaining money under false pretenses, for the reason that in a criminal case the offense is committed against the public, and not against the individual, and is prosecuted in the interest of the public and not of the prosecuting witness.' "

Other Kentucky cases and authorities will be found in those above referred to, supporting the rule with reference to the enlargement of the common-law offense of "cheating" by modern false pretense statutes, and some of the foreign cases expressly indorsing the rule that a victim of the false pretense is not required to examine the public records to ascertain the falsity of the representation against incumbrances of property, either personal or real, are Jenkins v. State, 97 Ala. 66, 12 So. 110; Miller v. People, 22 Colo. 530, 45 P. 408; Crawford v. State, 117 Ga. 247, 43 S. E. 762; Brown v. State, 62 Tex. Cr. R. 592, 138 S. W. 604; Keyes v. People, 197 Ill. 638, 64 N. E. 730; Holton v. State, 109 Ga. 127, 34 S. E. 358; People v. Smith, 3 Cal. App. 62, 84 P. 450; State v. Trisler, 49 Ohio St. 583, 31 N. E. 881; State v. Penley, 27 Conn. 589; State v. Fooks, 65 Iowa 196, 452, 21 N. W. 561, 773; People v. McAllister, 49 Mich. 12, 12 N. W. 891; State v. Hurst, 11 W. Va. 54.

The annotations to the case of State v. Keyes, 196 Mo. 136, 93 S. W. 801, 7 Ann. Cas. 23, and reported in 6 L. R. A. (N. S.) 369 (the annotations being on page 371), refer to the Grady case as holding that the offense is not committed when the pretense may be disproven by the public record, on the ground that the means of dis-

covery are at hand under the old doctrine relating to the common-law crime of cheating, but that reference is immediately followed by this language:

> "But the weight of authority seems to be against the latter (Grady case) proposition, and holds that, where money was obtained by false statements as to title to, or interest in, real estate, it is no defense that the true state of the title might have been discovered by an inspection of the records in the clerk's office where the land lies."

Support for the doctrine of the foregoing cases and authorities opposing that of the Grady case is found in the comparatively recent case of Smith v. Commonwealth, 153 Ky. 385, 155 S. W. 1125. The defendant in that case was indicted under section 1212 of our statutes, making it a felony for one to falsely pretend and represent himself as an officer, whereby he collects from another money that might be lawfully demanded by the officer whom the offender falsely impersonates. It readily will be seen that the offense for which defendant in that case was indicted was but a particularized instance of the general class of cheats and frauds denounced by section 1208, under which defendant herein was indicted. Both statutes are leveled at the punishment of one who obtains money or property by false pretense; the one involved in the Smith case being confined to a particular class of false pretenses. In that case it was insisted by defendant's counsel that the prosecution would not lie, because the person deceived, and who was induced to part with his money because of the false impersonation by defendant, was negligent in not ascertaining for himself the truth or falsity of the impersonation, since he "had the means at hand" by which he could discover the truth, and to thereby protect himself from the consequences of the fraud. At least one of such alleged ready means was the public record by which one is clothed with official duties; it being a matter that necessarily appeared on the proper public record. Our opinion, however, denied that contention, and in doing so, said:

> "This argument finds a sufficient answer in the statement that the statute does not require that the one impersonating an officer should make such representations as would induce a reasonably prudent person to accept his statements as true, and part

with his money or property under the belief that he was an officer, in order to establish his guilt. It is sufficient if the representations are made with the view of procuring money or property, and, as a result thereof, money or property is procured by the person so representing himself to be an officer. If the testimony of Toliver is true, the representations made to him by appellants had the effect of making him pay over the alleged fine rather than go to jail. He paid because he was afraid not to. Old, decrepit, uneducated, and ingorant of his rights, though conscious of having done no wrong, he yielded to the superior power of those claiming to be clothed with civil authority, and paid the money demanded. For this wrong appellants are amenable to the law, and subject to the punishment prescribed by section 1212, Kentucky Statutes.''

It will be perceived that no reference was made therein to the Grady opinion, but we construe what the court there said as directly in conflict with it and in disregard of it. So that we see that the great weight (in number) of decided cases and in textbooks and annotations is against the doctrine of the Grady case, and which is pointed out by them to be illogical, and not supported by sound or correct reasoning. We have been unable to find any case from this court approving that doctrine under identical facts. Some of our subsequent opinions, one of which was that in the Beckett case, refer to that doctrine, but evidently not with the intention and purpose of approving it, but only by way of argument in support of the conclusions reached on a different state of facts. Under such circumstances, such references are necessarily dictum, and as able an author as Mr. Roberson criticizes it, as we have seen, in his work devoted exclusively to local criminal law.

Independently, however, of all of the foregoing, we are unable to find any logical reason in support of the Grady opinion on the point now under consideration. The authorities, supra, and all others relating to the question, are unanimous in saying that the purpose of the statute is to punish and suppress knavery, rascality, and scoundrelism, by and through which the false pretender induces his victim to part with his property under the belief in the truth of the pretense made to him, and which he had the right to and did believe, and acted upon to his loss and detriment. That being the undoubted

purpose of the statute, then how could the guilt of the perpetrator be palliated or obliterated through the cautious and prudent act of a stranger in placing his lien or title papers upon record? Such a precautionary step on his part could have no alleviating effect on the criminal intent and purpose of the defendant in the prosecution. Manifestly, under the doctrine of the Grady opinion, if the misrepresented title or incumbrance was not of record, then the false pretense, that none such existed, would be punishable under the statute, since in that case there would be no record of which the victim would be required to take notice.

Clearly, it was never the intention of the Legislature, in enacting the statute, to allow such a collateral circumstance of recordation to defeat the purpose of its enactment. Moreover, it is everywhere conceded that the obtention of money upon a check on a bank in which the pretender claims to have deposits sufficient to meet it is punishable under the statute, although under the "means at hand" doctrine the victim could as easily ascertain the facts so falsely represented by communicating with the bank, especially if it was a local one, much more easily and readily than he could the fact of incumbrance or no incumbrance upon either real or personal property as shown by the public records. Taking this case as an illustration: The alleged false pretense consisted in defendant stating that his Highlands property was free from incumbrance. That term is broad enough to include vendors' liens, mortgages, mechanics' liens, attachments, and execution liens, and perhaps others. Such liens under existing law may all be recorded with the county court clerk, and it would require one learned in the law and an expert in abstracting to ascertain the facts after he got to the records, and to our minds it would be nothing short of flagrant disregard of the high public policy that the Legislature had in view in enacting the statute to hold that it could be defeated, if the laymen to whom most generally such pretenses are made, was required to disbelieve the false pretender, and to search the records, and to discover all possible incumbrances. We therefore conclude that the doctrine of the Grady case on the point under consideration is supported neither by authority nor by reason, and that it should be no longer followed, and it is hereby overruled. The court, therefore, did not err in overruling the demurrer

to the indictment, and in declining to give the offered peremptory instruction to acquit defendant.

The errors complained of under ground (3) are that the court erroneously submitted to the jury pretenses (a) and (b), supra, and which, as hereinbefore pointed out, is correct. On another trial, if the evidence is substantially the same, the court will not include in its instructions either of such alleged pretenses. The other criticism of the instructions is that the court should have said to the jury that it could not convict defendant, "unless they should believe that the false representations, if made, were such as were calculated to mislead and deceive a person of ordinary prudence and discretion." That same contention was disposed of adversely to counsel's contention in the Beckett case, supra, and is not sustained by the authorities to which we have already referred, and this ground is held to be without merit.

For the reasons stated, the judgment is reversed, with directions to set it aside and grant the new trial, and for proceedings consistent with this opinion.

The whole court sitting, except Judge Sampson, who was absent.