STATE, RESPONDENT, *v.* FOOT, APPELLANT.

(No. 7,348.)

(Submitted March 6, 1935. Decided March 30, 1935.)

[48 Pac. (2d) 1113.]

*Mr. W. E. Keeley* and *Mr. W. T. Boone,* for Appellant, submitted a brief; *Mr. Boone* argued the cause orally.

38

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Enor K. Matson,* Assistant Attorney General, for the State, submitted a brief; *Mr. Matson* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

An information was filed in the district court of Cascade county against the defendant, charging him with obtaining money under false pretenses. A motion was made to set aside and quash the information, which was denied by the trial court. A demurrer was thereafter interposed to the information and overruled by the court. The defendant entered a plea of not guilty, and a trial of the cause resulted in a verdict of guilty, fixing the punishment at imprisonment in the state penitentiary for one year; judgment was entered in accordance therewith. A motion for new trial was made, heard and denied. The appeal is from the judgment and the order denying defendant's motion for new trial.

The defendant assigns error upon the ruling of the court below denying the motion to quash and set aside the information. It appears from the record in support of the motion to quash that a preliminary hearing on the charge contained in the information was first had in a justice's court. That proceeding was dismissed after at least some evidence had been produced, upon the ground that the magistrate had lost jurisdiction by continuing the hearing on the preliminary hearing for more than ten days without the consent of the defendant. Thereafter the county attorney moved in the district court for leave to file the information, which was granted, and the information on which this trial was had was filed.

Defendant bases his argument upon the following provision of section 8, Article III, of the Constitution: "All criminal actions in the district court, except those on appeal, shall be prosecuted by information, after examination and commitment by a magistrate, or after leave granted by the court, or shall be prosecuted by indictment without such examination or commitment, or without such leave of the court." He argues: "Here the constitutional provision was violated in that the state proceeded under both of the first two methods."

An information can only be filed after examination and commitment where leave of court has never been obtained. (*State* v. *McCaffery*, 16 Mont. 33, 40 Pac. 63.) Section 11891, Revised Codes 1921, provides that the information must be set aside in either of the following cases: "If it be on information—1. That leave to file the same had not been granted by the court; 2. That before the filing thereof the defendant had not been legally committed by a magistrate. * * * "

This court in the case of *State* v. *Bowser*, 21 Mont. 133, 53 Pac. 179, 180, said: "We said in the case of *State* v. *Brett*, 16 Mont. 360, 40 Pac. 873: 'It is not necessary, in order to vest power in the county attorney to file an information, that there shall be a preliminary examination and commitment. He may act, after leave has been granted by the court, in a case like the one at bar, where there may not have been any charge or information before a committing magistrate.' And we say now, further, that there can be no interpretation put upon any statute of the state which will take away the constitutional right of prosecution by information filed in the district court after leave has been granted by the court, where there has been no examination and commitment, or where there has been no prosecution by indictment. The true construction of section 1910 [now 11891] of the Penal Code is that an information must be set aside: First, if it be a fact that leave to file the same has not been granted by the court; or, second, if it be a fact that before the filing thereof the defendant had not been legally committed by a magistrate. * * * Yet all of the facts enumerated in the

40

first two of these subdivisions need not exist, as prerequisites to filing an information. To hold otherwise would be to destroy the meaning of the disjunctive clauses of the constitutional section heretofore quoted, which expressly authorize prosecution by information filed by leave of court without examination and commitment, or, after examination and commitment, without the leave of court."

On the foregoing authorities, the motion to quash and set aside the information was properly denied.

Defendant urges that the trial court was in error in refusing to instruct the jury that, before they could convict the defendant, "it must appear from the evidence that such trick, deception and false representation were of a character against which a man of ordinary caution and intelligence could not have guarded himself."

The common-law rule with reference to the crime of cheating and the early decisions dealing with the crime of obtaining property by false pretenses declared that, to be indictable, the representations must be of such a character as to deceive a person of ordinary caution and prudence. (11 R. C. L. 833.) In other words, under the common-law rule it was essential that the fraud should be patent. It was in part to meet this difficulty that the statute of false pretenses was passed, and under this statute it has been repeatedly held that it matters not how latent the falsity of a pretense may be, if it succeed in defrauding. (2 Wharton on Criminal Law, 12th ed., sec. 1455.) In some jurisdictions the common-law rule is adhered to under the statute. (Sec. 1456, Id.; 11 R. C. L. 833.) However, the common-law rule is not now usually recognized as the correct rule, the view being taken that statutes covering the crime are designed to protect not only the ordinarily wary and prudent, but also the ignorant, credulous and foolish. (25 C. J. 598; 11 R. C. L. 834; 2 Wharton on Criminal Law, sec. 1455; *Palotta* v. *State,* 184 Wis. 290, 199 N. W. 72, 74; *State* v. *Southall,* 77 Minn. 296, 79 N. W. 1007; *Oxx* v. *State,* 59 N. J. L. 99, 35 Atl. 646.) In the Wisconsin case cited, supra, the court, after citing two early cases of that state, often referred to as supporting the common-

law rule, made the following observation: "But it seems to be now settled by the great weight of authority that statutes of this character are designed to protect the unwise and the credulous as well as the able and the vigilant. Perhaps the former class more need the protection of the law than the latter. When one has succeeded in defrauding another by means of false representations, he should not be allowed to shield himself by the claim that his victim was less clever or more credulous than himself. Hence it is not the prevailing rule or the rule in this state that, where all the other ingredients of the offense have been committed, the defendant should be acquitted on the ground that the person defrauded failed to exercise ordinary care and prudence. The real question is not whether the representations are such as might deceive persons of ordinary care, but whether they are such as are adapted to deceive and do deceive the persons to whom they are made." The citation of authority in support of the majority rule could be greatly multiplied.

Our statute defining the offense of obtaining money or property by false pretenses (sec. 11410) does not by its terms limit its operation to persons of ordinary caution and prudence. It was enacted when the common-law rule had been in force in many jurisdictions for many years, and to adopt that rule under this statute would be to read into it something that was not written there by the legislature. This we may not do. (Sec. 10519, Rev. Codes 1921.) The trial court was not in error in refusing the offered instruction.

Defendant argues that the evidence is insufficient, in that the state did not prove that the complaining witness relied upon the alleged false representations made by defendant, and that, by reason of so relying, he parted with his money. One of the essential elements of the crime of obtaining money under false pretenses is that the injured party believed the false representations to be true and, relying thereon, parted with money or property which was received by the accused. (*State* v. *Bratton*, 56 Mont. 563, 186 Pac. 327; *State* v. *Brantingham*, 66 Mont. 1, 212 Pac. 499.)

42

Mr. Tosi, the complaining witness in this case, was a hodcarrier by trade, an Italian by birth, unable to read the English language, and spoke it with difficulty. It was necessary on the trial of the case for him to give his testimony with the aid of an interpreter. He had resided in Great Falls for a number of years, and had prior to the month of June, 1932, met the defendant, who was a bricklayer. Tosi testified that he had four conversations with the defendant prior to and including the time when he parted with $350 of his money. It appears that at some time prior to the negotiations in question, the Conrad Refining Company, of Conrad, had a fire in its plant resulting in injury making reconstruction necessary. Tosi testified that on the occasion of the first conversation with the defendant, the latter said he had a contract with the Conrad Refining Company, but "he wasn't sure that he had the contract." As a part of the next conversation, it was testified by Tosi that the defendant said: "At that time he said he had the contract, that is, he wasn't sure of the contract, but he had to have $350 as bonds to secure the contract; he said he had to have $350 to complete his thousand dollar cash bond." He further testified that on June 28, 1932, the defendant called at his home and that "I asked Mr. Foot where was the contract, and he said he would go over and get it and he went over to get the contract and he came back to my residence again that morning." Mr. Tosi then sent for a Mr. Foreman who resided in one of his houses near by, and testified that, after he came over, Foot said, "He had the job and if he had a thousand dollar bond, then he would get the contract." The witness further testified that "on that occasion I gave Mr. Foot $350 in cash. It was my money. Mr. Foot asked me for this money. I never got any part of it back." Tosi further testified that he believed the defendant had the contract, and that was the reason he gave him the money.

Foreman, the friend of Tosi, who was present at the time the money was paid over, testified that at the request of Tosi he read the contract to both Tosi and Foot; that "Mr. Foot stated he wanted the $350 to complete a thousand dollar contract, and he had the balance; it was a cash bond that was to be put up,

a thousand dollar cash bond, and he wanted the $350 from Mr. Tosi to complete the bond. Mr. Tosi gave him the $350; he handed it to me to count, and I counted the money and in turn gave it to Mr. Foot." Again this witness testified: "After I had read it, Mr. Tosi handed the money to me and I counted it out. Mr. Foot said that was the contract, and he was going to have it made legal, to the best of my knowledge. He already had the contract to build the refinery, but he needed bonds; in other words, he had the contract but all he needed was to put up a thousand dollar cash bond." He also testified that "I expressed an opinion when I read it, while Mr. Foot was there, that to the best of my knowledge it looked all right, and before the money was given over."

It was stipulated at the trial by counsel for the respective parties that "the defendant at no time had any contract with the Conrad Refining Company for the repairing of any buildings nor was it necessary for him to put up a thousand dollar cash bond in connection with the contract or with any other contract to the Conrad Refining Company." The defendant did not testify, and no evidence was offered on his behalf on the trial of the case.

It is argued by defendant that Tosi investigated the contract and relied upon the opinion of his friend Foreman. Foreman testified that the contract was not signed by anyone at the time he read it and when the money was paid to the defendant.

In 25 C. J. 599 it is said: "It is not sufficient that there is a false pretense; the owner of the property must rely on it; the pretense must be an effective cause in inducing the owner to part with his property. Therefore, if the owner has knowledge of the truth and does not believe the pretense, or, although believing it, yet parts with the property on some other inducement, or investigates it and parts with the property relying entirely on the results of his investigation, the offense has not been committed. But although the owner makes some investigation of the representations made by accused to ascertain their truth, yet if he nevertheless would not have parted with the goods but for such representations, believing them true, accused is guilty."

44

(See, also, sec. 1439, 2 Wharton's Criminal Law, 12th ed.) The foregoing rule is in entire harmony with our decisions cited, supra.

It does not appear from the record that Tosi ascertained the falsity of the representations prior to the delivery of his money to the defendant. Although it was stated that the defendant represented he had a contract with the Conrad Refining Company, yet the only reasonable interpretation of all of the testimony with reference to the representation made is that he asserted he had a tentative contract or proposed contract which could not become operative until he deposited a cash bond for the sum of $1,000. The evidence was sufficient to justify the verdict of the jury on the question of reliance by the complaining witness on the representations made by the defendant, as a result of which the money was delivered to the defendant.

Defendant argues that by reasonable investigation Tosi might have ascertained the falsity of the representation, namely, by communicating by telephone or otherwise with the officers of the refinery at Conrad, a distance of some forty miles from Great Falls. Many cases relating to the existence of an encumbrance on property are found in the books, where the falsity of the representations could have been determined by consulting the public records. The failure, however, of the defrauded person to make such investigation is held to be no defense. (*Slaughter* v. *Commonwealth,* 222 Ky. 225, 300 S. W. 619, 56 A. L. R. 1209; see, also, note 33 A. L. R. 853.) In 11 R. C. L. 835, it is written: "The courts are now generally agreed that the defendant's guilt does not depend upon whether the victim could, with reasonable diligence, have ascertained that the representations were false." Admittedly, cases can be found to the contrary; most of them are early ones. We find ourselves, however, in accord with the modern and majority rule.

The character of false or fraudulent representations or pretenses made a crime by the statute is a misrepresentation of an existing or past fact by one who knows it is not true. (*State* v. *Woolsey,* 80 Mont. 141, 259 Pac. 826.) Defendant argues that the proof is insufficient in that it shows a simple promise to do

something relating to a future event, and is therefore not an actionable false pretense within the rule of the *Woolsey Case.* He contends that the contract exhibited was not completed, in that it had not been executed by anyone, but was only a printed form and would not become effective until the bond was furnished. In 2 Wharton on Criminal Law, section 1440, it is said: ''But a concurrent promise does not neutralize any accompanying false pretense. If there be the false statement of an existing fact, the adding to this of false promises does not take the case out of the statute, when the false pretense was the decisive influence. And this holds, even though the prosecutor would not have yielded to the pretense without the promise.'' (See, also, 25 C. J. 594.) The evidence was sufficient as against this contention.

Defendant urges that the information was insufficient in that ▮ it did not disclose whether a false token was involved, or whether the representations were oral or written. It is argued by him that in the drafting of an information charging the crime of obtaining money under false pretenses under section 11410, the information must also conform to section 11987, which provides the kind and character of proof essential to a conviction. It is generally held that it is unnecessary for the information to allege the very words of the pretense or whether the pretense was spoken or written. (25 C. J. 624; *State* v. *Briggs,* 74 Kan. 377, 86 Pac. 447, 10 Ann. Cas. 904, 7 L. R. A. (n. s.) 278; *Commonwealth* v. *Mulrey,* 170 Mass. 103, 49 N. E. 91.) The information was sufficient.

Defendant contends that the proof establishes that the $350 ▮ delivered by Tosi to the defendant was Tosi's contribution to a partnership enterprise. It does appear from the record that the defendant promised Tosi work under the contract. In addition, the witness Foreman testified as follows: ''Mr. Foot said to Mr. Tosi in my presence that he and Mr. Tosi were going to be partners in this enterprise. Q. And that this $350 constituted Mr. Tosi's part in this partnership? A. He lacked the $350, so he stated, to complete the bond money, and they were going to split the profits fifty-fifty at the end of the contract.''

46

Defendant argues that one partner cannot be held criminally liable for embezzling the funds of the firm or for converting partnership funds. (*State* v. *Brown,* 38 Mont. 309, 99 Pac. 954.) The most that is established by this testimony is that there was an executory agreement or understanding to share the profits of the proposed contract, but this is insufficient to create a partnership. (*Croft* v. *Bain,* 49 Mont. 484, 143 Pac. 960.) At best the funds, if the creation of a partnership was contemplated, were contributed in furtherance of an executory contract to form a partnership, and funds so intrusted to another proposed partner under such executory contract are the subject of larceny. (*State* v. *Brown,* supra.) However, these funds were contributed as a direct result of false representations believed and relied upon by the complaining witness; and if a partnership was to be created, the purpose of it could never be realized, as it is stipulated that the defendant had no contract. The court was not in error in refusing to instruct the jury on the question of appropriation of partnership funds by a member of the partnership.

Lastly it is urged that the court was in error in permitting the witness Shields, sheriff of Cascade county, to testify to a certain conversation occurring between the witness and the defendant while the latter was a prisoner in the county jail. It is urged that the statements made by the defendant amounted to a confession and that the proper foundation for their admission was not laid. True, the foundation necessary for the admission of a confession was not established within the rule as last announced by this court in the case of *State* v. *Crighton,* 97 Mont. 387, 34 Pac. (2d) 511. The statements made by defendant did not amount to an acknowledgment of guilt, but were declarations of one or more of the independent facts from which, taken with other facts if established, guilt might be inferred. The distinction between admissions and confessions was recognized by this court and discussed at length in the case of *State* v. *Stevens,* 60 Mont. 390, 199 Pac. 256, and also in the case of *State* v. *Guie,* 56 Mont. 485, 186 Pac. 329. On these authorities we hold that the evidence was properly admissible.

After a careful review of the record and the assignments of error of the defendant, we find no reversible error in the record and accordingly the judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied October 1, 1935.